MCDERMOTT WILD LLC
900 Haddon Ave., Suite 233
Collingswood, NJ 08108
Tel.   (856) 746-7962
By:    John J. McDermott, Esq.
       (jmcdermott@mcdermottwild.com)
       Lauren Krohn Wild, Esq.

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel.   (713) 650-8805
By:    Kathy D. Patrick, Esq.
       (kpatrick@gibbsbruns.com)
       Anthony N. Kaim, Esq.
       Kevin A. Hoang, Esq.

*Attorneys for Defendant*
*Occidental Chemical Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| BASF CATALYSTS LLC, *et al.*, | ) |
| | ) Hon. Madeline Cox Arleo |
| Plaintiffs, | ) Hon. Leda Dunn Wettre |
| | ) |
| v. | ) Civil Action No. 2:26-cv-01226 |
| | ) |
| OCCIDENTAL CHEMICAL | ) Return date: April 20, 2026 |
| CORPORATION, | ) |
| | ) Oral Argument Requested |
| Defendant. | ) |
| | ) |

## BRIEF IN SUPPORT OF DEFENDANT OCCIDENTAL CHEMICAL
## CORPORATION'S RULE 12(b) MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................1

LAW APPLICABLE TO THIS MOTION...............................................2

BACKGROUND RELEVANT TO THE MOTION .................................4

     A.    OxyChem NY Consistently Performs Remedial Work at the Site. ......5

     B.    Litigation Over the Diamond Alkali Site. ...........................................9

ARGUMENTS AND AUTHORITIES ...................................................11

I.    The Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Declaratory Judgment Claim is Not Ripe.......................................12

II.    The Complaint Must Be Dismissed under Rule 19 for Failure to Join a Required Party, OxyChem NY.....................................................18

     A.    OxyChem NY is a Required Party Under Rule 19. ............................18

     B.    Was Joinder of OxyChem NY Feasible? .............................................18

III.    Plaintiffs Fail to State a Claim Because § 107(e) Provides No Right of Action..........................................................................................22

     A.    No Allegation of Conveyance or Transfer ..........................................23

     B.    No Private Right of Action Under § 107(e). .....................................24

     C.    Rather, Section 107(e) Provides a Rebuttal Defense. .........................28

IV.    Because this Lawsuit Duplicates Claims and Common Issues in Two Other Cases, the Court Should Exercise its Discretion and Dismiss it. ........30

CONCLUSION ....................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Hartford v. Haworth*,
300 U.S. 227 (1937) ...................................................................................22

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ...................................................................................25

*Am. States Ins. Co. v. Component Techs., Inc.*,
420 F. Supp. 2d 373 (M.D. Pa. 2005) .......................................................13

*Arizona v. California*,
283 U.S. 423 (1931) .....................................................................................2

*ARW Expl. Corp. v. Aguirre*,
947 F.2d 450 (10th Cir. 1991)....................................................................31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 3, 16

*Boat Basin Inv'rs, LLC v. First Am. Stock Transfer, Inc.*,
No. 03 CIV. 493 (RWS), 2003 WL 282144 (S.D.N.Y. Feb. 7, 2003).................19

*Borough of Longport v. Netflix, Inc.*,
94 F.4th 303 (3d Cir. 2024)........................................................................27

*Butta v. GEICO Casualty Co.*,
400 F. Supp. 3d 225 (E.D. Pa. 2019)..........................................................31

*Byers v. Intuit, Inc.*,
564 F. Supp. 2d 385 (E.D. Pa. 2008)..........................................................29

*California v. Sierra Club*,
451 U.S. 287 (1981) .............................................................................. 25, 28

*Cort v. Ash*,
422 U.S. 66 (1975) .....................................................................................26

*Excelsior Ins. Co. v. Selective Ins. Co. of Am.*,
696 F. Supp. 3d 15 (D.N.J. 2023)...............................................................13

*Fireman's Fund Ins. Co. v. Ignacio,*
  860 F.2d 353 (9th Cir. 1988) ................................................................................31

*Gould Elecs. Inc. v. United States,*
  220 F.3d 169 (3d Cir. 2000) ..................................................................................2

*Malhan v. Sec'y United States Dep't of State,*
  938 F.3d 453 (3d Cir. 2019) ................................................................................23

*Mayer v. Belichick,*
  605 F.3d 223 (3d Cir. 2010) ..................................................................................3

*Metropolitan Prop. & Liab. Ins. Co. v. Kirkwood,*
  729 F.2d 61 (1st Cir. 1984) ................................................................................31

*Mine Safety Appliances Co. v. Forrestal,*
  326 U.S. 371 (1945) ............................................................................................20

*Mitcheson v. Harris,*
  955 F.2d 235 (4th Cir. 1992) ..............................................................................31

*Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC,*
  900 F. Supp. 2d 529 (E.D. Pa. 2012) ............................................................ 13, 14

*NE Hub Partners, L.P. v. CNG Transmission Corp.,*
  239 F.3d 333 (3d Cir. 2001) ..................................................................................2

*Nichols v. Rysavy,*
  809 F.2d 1317 (8th Cir.1987) ..............................................................................20

*Pension Benefit Gty Corp. v. White Consol. Indus., Inc.,*
  998 F.2d 1192 (3d Cir. 1993) ................................................................................3

*Peoples Gas Light & Coke Co. v. Beazer E., Inc.,*
  802 F.3d 876 (7th Cir. 2015) ........................................................................ 28, 31

*Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio,*
  40 F.3d 1454 (3d Cir. 1994) ................................................................................12

*Reichhold, Inc. v. U.S. Metals Refining Co.,*
  522 F. Supp. 2d 724 (D.N.J. 2007) ......................................................................23

iii

*Schilling v. Rogers*,
　363 U.S. 666 (1960) ...............................................................................................22

*Seashore Asphalt Corp. v. Pigliacelli*,
　No. CV 21-11920 (CPO), 2022 WL 248102 (D.N.J. Jan. 27, 2022) ............ 20, 22

*State Auto Ins. Companies v. Summy*,
　234 F.3d 131 (3d Cir. 2000) ................................................................. 4, 31

*State Farm Mut. Auto. Ins. v. Bonwell*,
　248 F.2d 862 (8th Cir. 1957) ..............................................................................31

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
　912 F.2d 643 (3d Cir. 1990) .............................................................. *passim*

*Texas v. United States*,
　523 U.S. 293 (1998) ................................................................................................2

*Touche Ross & Co. v. Redington*,
　442 U.S. 560 (1979) .............................................................................................26

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
　444 U.S. 11 (1979) ..............................................................................................26

*United Specialty Ins. Co. v. Cole's Place, Inc.*,
　936 F.3d 386, (6th Cir. 2019) .............................................................................31

*United States v. Atl. Rsch. Corp.*,
　551 U.S. 128 (2007) .............................................................................................17

*USA Roof Masters, LLC v. Liberty Mut. Mid Atl. Ins. Co.*,
　721 F. Supp. 3d 372 (E.D. Pa. 2024)..................................................................18

*Vincent Cusumano Architect P.C. v. Berkshire Hathaway Direct Ins. Co.*,
　No. 23-cv-22970, 2025 U.S. Dist. LX 60164 (D.N.J. Mar. 29, 2025).................31

*Wilton v. Seven Falls Co.*,
　515 U.S. 277 (1995) ................................................................................................4

*Wisconsin Gas LLC v. Am. Nat. Res. Co.*,
　2023 WL 2652079 (E.D. Wis. Mar. 27, 2023)............................................ 28, 31

*Wyatt v. Virgin Islands, Inc.*,
  385 F.3d 801 (3d Cir. 2004) ........................................................... 2, 12

*Zedonis v. Lynch*,
  233 F. Supp. 3d 417 (M.D. Pa. 2017) ....................................................4

**Statutes**

28 U.S.C. § 2201 ....................................................................................23

42 U.S.C. § 9607(a) ...................................................................... *passim*

42 U.S.C. § 9607(a)(4)(B) .....................................................................26

42 U.S.C. § 9607(e) ...................................................................... *passim*

42 U.S.C. § 9607(e)(1).................................................................. *passim*

42 U.S.C. § 9613 ....................................................................................25

42 U.S.C. § 9613(f)(1) ...........................................................................27

42 U.S.C. § 9613(g)(2)(B) ............................................................. 27, 28

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................... 1, 2, 11, 12

Fed. R. Civ. P. 12(b)(6)........................................................ 1, 11, 22, 29

Fed. R. Civ. P. 12(b)(7)............................................. 1, 11, 18, 20, 21, 22

Fed. R. Civ. P. 19(a)............................................................................ 11, 18

Fed. R. Civ. P. 19(a)(1)..........................................................................19

Fed. R. Civ. P. 19(b) ................................................................. 19, 20, 22

Fed. R. Evid. 201 .....................................................................................4

**INTRODUCTION**

Defendant Occidental Chemical Corporation, a Texas corporation ("OCC Texas"), files this Brief in Support of its Motion to Dismiss Plaintiffs' Complaint, ECF 1 ("Complaint" or "Compl."). The Complaint alleges a string of speculative contingencies that may never occur, all dependent on the outcome of other lawsuits already filed between the parties. It presents no ripe controversy, so the Court must dismiss it under Fed. R. Civ. P. 12(b)(1). It fails to join Occidental Chemical Corporation, a New York corporation ("OxyChem NY"), a required party whose alleged CERCLA liability[1] is the basis for this lawsuit, *see* Compl. at 25, so the action must be dismissed under Fed. R. Civ. P. 12(b)(7). The Complaint also fails to state a claim for relief. It improperly invokes the Declaratory Judgment Act to try to impose "liability," Compl. at 25, under CERCLA § 107(e). But Congress provided no private right of action under that statutory provision, so the Court must dismiss the action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Finally, by bringing a fourth lawsuit to raise claims already at issue in three earlier cases, the Complaint unlawfully splits liability, multiplying litigation

---

[1] Plaintiffs sue only OCC Texas, a newly created entity that received certain operating assets and liabilities of OxyChem NY in a Texas divisional merger and seek a declaratory judgment that OCC Texas "is jointly and severally liable for OxyChem NY's CERCLA liabilities." Compl. at 25. Elsewhere, the Complaint pleads that Environmental Resource Holdings, LLC ("ERH") is the surviving successor to OxyChem NY. Compl. ¶82 and diagram at 20.

1

to no purpose. Accordingly, the Court should exercise its discretion to dismiss it under the Declaratory Judgment Act.

## LAW APPLICABLE TO THIS MOTION

Ripeness is a jurisdictional requirement. A dispute is not ripe for judicial determination "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Wyatt v. Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Texas v. United States*, 523 U.S. 293, 300 (1998)); *see also Arizona v. California*, 283 U.S. 423, 462 (1931) ("Claims based merely upon 'assumed potential invasion' of rights are not enough to warrant judicial intervention."). The absence of ripeness is challenged under Rule 12(b)(1) because ripeness is jurisdictional. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.*

The Third Circuit applies a more stringent ripeness test to declaratory judgment actions because such actions inherently "exist[] in some tension with traditional notions of ripeness." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). Three elements must be present for an action for declaratory relief to be ripe: "[1] … adversity of the interests of the parties, [2] the

conclusiveness of the judicial judgment and [3] the practical help, or utility, of that judgment." *Id.*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Rule 12(b)(6) requires the plaintiff to plead sufficient "factual content" to allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged," rather than "a sheer possibility that a defendant has acted unlawfully." *Id.* In deciding a Rule 12(b)(6) motion, the court may consider not only the complaint and exhibits attached thereto, but also "matters of public record," including other publicly filed actions, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), and may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Gty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

The Declaratory Judgment Act confers wide discretion on the court to dismiss declaratory judgment claims that duplicate other litigation or do not promote judicial economy. As explained by the Supreme Court, in the declaratory judgment context, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."

3

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 287–88 (1995). The Third Circuit agrees. It has long recognized that the Declaratory Judgment Act "contemplates that district courts will exercise discretion in determining whether to entertain such actions," such that "[a] federal court should … decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 132, 135 (3d Cir. 2000).

## BACKGROUND RELEVANT TO THE MOTION

This is the fourth case in this Court that involves claims of responsibility for the cleanup of the Diamond Alkali Superfund Site (the "Site").[2] The Court's docket[3] discloses the following facts pertinent to this motion.

Pollution of the Passaic River dates to the Industrial Revolution, when "a multitude of industrial operations, such as manufactured gas plants, paper manufacturing and recycling facilities ... and manufacturers of materials such as

---

[2] The three existing cases are *Occidental Chemical Corporation v. 21st Century Fox America, Inc., et. al*, No. 2:18-cv-11273 (D.N.J.) ("*21st Century Fox*"); *Occidental Chemical Corporation v. Givaudan Fragrances Corp., et al.*, No. 2:23-cv-01699 (D.N.J.) ("*Givaudan*"); *United States v. Alden Leeds, Inc., et al.*, No. 2:22-cv-07326 (D.N.J.) ("*Alden Leeds*").

[3] The Court may take judicial notice of filings on its own docket in resolving motions to dismiss. *See* Fed. R. Evid. 201; *Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("[J]udicial opinions and docket sheets are public records, of which this court may take judicial notice in deciding a motion to dismiss.").

rubber, rope, textiles, paints and dyes, pharmaceuticals and chemicals, had located along the river's banks." Ex. A (EPA OU2 Record of Decision Summary (2016)) at 3. In 1984, the EPA designated the former Diamond Alkali property as a Superfund site.

### A.      OxyChem NY Consistently Performs Remedial Work at the Site.

Though EPA admits OxyChem NY never polluted the river itself, Ex. B (News Release from Region 02), OxyChem NY has acknowledged its liability as a corporate successor to the Diamond Alkali company. *See* ECF 967 in *21st Century Fox* (OxyChem NY Response to SPG Motion for Partial Summary Judgment) at 1. And, as the Complaint admits, OxyChem NY has a long history of spearheading remedial efforts at the Passaic River.

### 1.      OxyChem NY Completes the Remedy at OU1.

For example, in 1987, the EPA selected an interim containment remedy for the former Diamond Alkali plant site, also known as "Operable Unit 1" or "OU1." Ex. A (EPA OU2 Record of Decision Summary (2016)) at 10; *see also* Compl. ¶57(a). OxyChem NY agreed to perform the EPA's remedy for OU1, *id.*, completed it in 2004, and "has performed operation and maintenance" under the EPA's supervision ever since. ECF 288-5 in *Alden Leeds* (Declaration of Alice Yeh) at ¶8. As a result of OxyChem NY's efforts, OU1 "is no longer an ongoing source of

contamination to the Passaic River." Ex. A (EPA OU2 Record of Decision Summary (2016)) at 10.

### 2.    OxyChem NY Investigates and Removes Pollution at the Site.

The Complaint next admits that in 1994 and 2004, OxyChem NY voluntarily agreed to perform two studies to scope and investigate the pollution at the Site. In 1994, it agreed to study the lower six miles of the Lower Passaic River. Compl. ¶57(b). In 2004, it agreed to perform the remedial investigation and feasibility study for Newark Bay. Compl. ¶57(c). The Complaint also alleges that OxyChem NY participated, with other potentially responsible parties ("PRPs"), in the Remedial Investigation and Feasibility Study of the Lower Passaic River Study Area, Compl. ¶57(d), (e), and alleges that OxyChem NY performed two other removal actions, one in 2007 involving 200,000 cubic yards of contaminated sediments, Compl. ¶57(f), and another in 2012 that removed "two feet of sediment from… a five-acre mudflat located on the eastern side of the Passaic River," Compl. ¶57(g).

### 3.    OxyChem NY Designs the Remedy for OU2.

OxyChem NY did not stop there. In 2016, the EPA determined that active cleanup of the lower 8.3 miles of the Passaic River—also known as "Operable Unit 2" or "OU2" of the Site—was required. Ex. A (EPA OU2 Record of Decision Summary (2016)) at 4. The Complaint again admits that, as with OU1, OxyChem NY stepped forward voluntarily to perform the remedial design at its own cost.

Compl. ¶57(h). OxyChem NY completed that work and EPA approved OxyChem NY's design in May 2024. Ex. C (Approval of Final Clean-Up Design for Lower 8.3 Miles of the Passaic River). EPA estimated the cost of OxyChem NY's design of the remedy to be $165 million. Ex. B (News Release from Region 02).

### 4. OxyChem NY Designs the Remedy for OU4.

In 2021, the EPA elected to pursue an interim remedy for the upper nine miles of the Passaic River, estimated to cost $441 million. Ex. D (EPA OU4 Record of Decision Summary (2021)). OxyChem NY has again taken the lead in performing the remedial design – this time, at an EPA-estimated cost of $92 million. *Id.* ¶18.; Ex. E (April 7, 2023 Letter from EPA to OxyChem NY); *see also* Compl. ¶57(i).

### 5. OxyChem NY Offers to Implement Remedies in OU2 and OU4.

Though not acknowledged in the Complaint, the Court's docket reflects that OxyChem NY has also made repeated offers to EPA to implement and construct the remedies at OU2 and OU4, conditioned solely on the preservation of OxyChem NY's right to seek contribution from other responsible parties. *See* ECF 34-1 at 10 in *Alden Leeds*. EPA has consistently rejected these offers, preferring instead to settle with other PRPs for pennies on the dollar of the expected remedy costs. That settlement, which was entered in the *Alden Leeds* matter, is now on appeal to the Third Circuit.

**6.    Plaintiffs File a Fourth Lawsuit and Attack OxyChem NY's Corporate Reorganization.**

Plaintiffs have now filed a ***fourth*** lawsuit concerning the Site. This time, thirty-eight plaintiffs, all counter-claimants against OxyChem NY in *21st Century Fox* and many who are also parties in *Givaudan*, seek here a declaratory judgment raising the same fundamental question: As between Plaintiffs and OxyChem NY, who is responsible for the cleanup of the Passaic River?

The Complaint rests on facts at issue in the earlier filed actions. *See e.g.,* Compl. at ¶¶57, 62, and 65. To those, it adds only allegations about a corporate reorganization of OxyChem NY, Compl. ¶19, and a claim seeking a declaratory judgment that OCC Texas, a newly created Texas corporation, is "jointly and severally responsible for OxyChem NY's [unproved] CERCLA liabilities." Compl. at 25 ¶2. Plaintiffs also invoke CERCLA §107(e), a provision that addresses the "conveyance" of CERCLA liabilities. Compl. ¶101.

Though it invokes §107, the Complaint does ***not*** allege the reorganization conveyed or transferred any Diamond Alkali CERCLA liabilities ***out of*** OxyChem NY. Instead, it alleges that OxyChem NY merged with Snowcone, LLC, a Texas limited liability company, which was then renamed Occidental Chemical Company, LLC. Compl. ¶81. That company, in turn, underwent a divisive merger in which a new company—OCC Texas—was created after which Occidental Chemical Company, LLC was "renamed Environmental Resource Holdings, LLC" ("ERH").

8

Compl. ¶82. Thus, according to the pleaded allegations in the complaint, ERH *is* Occidental Chemical Company LLC, which *is* successor by merger to OxyChem NY. *Id.* More important, the Complaint does not allege that *any* of OxyChem NY's CERCLA liabilities were conveyed or transferred anywhere.

### B.    Litigation Over the Diamond Alkali Site.

Unsurprisingly, the enormous cost and scope of the remedial work at the Site prompted litigation among the parties potentially responsible for polluting the River. The Complaint repeatedly pleads and admits this prior litigation exists.

#### 1.    The *21st Century Fox* Action.

*First*, in June 2021, OxyChem NY filed claims for cost recovery and contribution for the costs OxyChem NY incurred to perform the remedial design in OU2, as well as other response costs and a declaratory judgment regarding responsibility for future costs. That suit named as defendants every Plaintiff in this action, as well as other parties. *See* ECF 1 and *docket* at *passim* in *21st Century Fox*; *see also* Compl. ¶60 (admitting that OxyChem NY filed contribution claims against these Plaintiffs in *21st Century Fox*).

Many defendants—and, importantly, ***all Plaintiffs here***—filed contribution counterclaims against OxyChem NY seeking cost recovery, contribution, and a declaratory judgment concerning the proper allocation of responsibilities and remediation costs under CERCLA. *See, e.g.*, ECF 728 in *21st Century Fox* (BASF

9

Catalysts Answer and Counterclaims) at 54–61; ECF 660 in *21st Century Fox* (Textron, Inc. Answer and Counterclaims) at 87–94; ECF 693 in *21st Century Fox* (Hexcel Corporation Answer and Counterclaims) at 88–96; ECF 718 in *21st Century Fox* (PPG Industries, Inc. Answer and Counterclaims) 86–94.

The Complaint admits these claims remain pending in *21st Century Fox*. *See* Compl. ¶¶ 62-63 (alleging Plaintiffs here "filed counterclaims against OxyChem NY for contribution, cost recovery, declaratory judgment, and/or breach of contract for costs incurred or to be incurred at OU2 and OU4.")

### 2.    The *Givaudan* Action.

*Second*, in March 2023, OxyChem NY filed claims under CERCLA § 107 seeking cost recovery for response costs it incurred to design the remedy for the Upper Nine Miles of the Lower Passaic River Study Area, naming 36 parties as defendants, again including many Plaintiffs here. *See* ECF 1 in Case 2:23-cv-1699, *Occidental Chemical Corporation v. Givaudan Fragrances Corporation et al.* ("Givaudan").

The Complaint admits this action exists and remains pending. Compl. ¶64.

### 3.    The *Alden Leeds* Action.

In February 2025, the Court (on these Plaintiffs' Motion) stayed all claims in *21st Century Fox* and *Givaudan* pending the outcome of a third action, *United States v. Alden Leeds, Inc.*, No. 2:22-cv-07326. *See* ECF 2351 in *21st Century Fox*; ECF

10

149 in *Givaudan*. *Alden Leeds* is on appeal before the Third Circuit. The Complaint admits that "[a]s of the filing of this Complaint, the consent decree proceedings in *Alden Leeds* are pending appeal and *21st Century Fox* and *Givaudan* remain stayed." Compl. ¶65. *See also* ECF 2351 in *21st Century Fox* (text stay order) and ECF 149 in *Givaudan* (same).

## ARGUMENTS AND AUTHORITIES

Ignoring these stays, Plaintiffs have filed a fourth lawsuit concerning the Site. The Complaint must be dismissed for several reasons.

First, it is not ripe and so must be dismissed under Rule 12(b)(1). *See* Part I.

Second, Plaintiffs have failed to join OxyChem NY, a required party whose liabilities are at the heart of Plaintiffs' request for a declaratory judgment that OCC Texas is "jointly and severally liable for OxyChem NY's CERCLA liabilities." Compl. at 25. This requires dismissal under Rules 12(b)(7) and 19(a). *See* Part II.

Third, Plaintiffs fail to state a proper declaratory judgment claim because the statute on which their claim rests—CERCLA §107(e)—creates no private right of action. This required dismissal under Rule 12(b)(6). *See* Part III.

Finally, even if Plaintiffs *did* state a valid claim for declaratory relief (they have not), the new lawsuit needlessly duplicates pending litigation in *21st Century Fox* and *Givaudan* so the Court should exercise its discretion to dismiss it for reasons of judicial economy. *See* Part IV.

11

I.    **The Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Declaratory Judgment Claim is Not Ripe.**

Plaintiffs' Complaint is not ripe. It does not allege Plaintiffs have already suffered an injury from the corporate reorganization Plaintiffs attack; instead, it speculates that Plaintiffs *might* be injured *if* a long series of events were to happen. But none of those contingent events has happened, and all of them might never happen, so Plaintiffs' claim is not ripe and must be dismissed under Rule 12(b)(1).

Specifically, the Complaint conjectures the following series of events could, at some point, happen: (1) in *21st Century Fox*, where no liability decision has yet been made, the Court might eventually find Plaintiffs have proved their contribution claims against OxyChem NY, Compl. ¶27, (2) OxyChem NY (renamed ERH) might then refuse or be unable to pay the judgment, *Id.* ¶93, and (3) Plaintiffs will then bring an actual contribution claim (not an incognizable declaratory judgment action) against OCC Texas, *id.* ¶102.

Each of these "rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Wyatt,* 385 F.3d at 806. Intervening events may also "remove the possibility of harm," such that "the court must not address the now-speculative controversy." *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994). Courts in this circuit dismiss cases on ripeness grounds where "the extent of the liabilities" to be indemnified is "merely hypothetical." *Am. States Ins. Co. v. Component Techs., Inc.*,

420 F. Supp. 2d 373, 375 (M.D. Pa. 2005); *see also Excelsior Ins. Co. v. Selective Ins. Co. of Am.*, 696 F. Supp. 3d 15, 34 (D.N.J. 2023) (dismissing declaratory action where plaintiff "has not shown why it is necessary here for the Court to adjudicate the issue of indemnification now … before the underlying liability has been determined.") and *Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC*, 900 F. Supp. 2d 529, 534 (E.D. Pa. 2012) (dismissing declaratory action because it does not "definitively decide[] the rights of the parties," since movant's rights would be affected only if a hypothetical "string of events" occurred).

When the requested declaration is "based on a contingency," and asks the court "to declare defendants liable *if* another court finds defect," *Step-Saver*, 912 F.2d at 648 (emphasis original), the claim is not ripe and should be dismissed.

This is exactly that case. Plaintiffs here seek a declaratory judgment that **if** OxyChem NY is liable to them in contribution, **then** OCC Texas is also jointly and severally liable **and** the divisive merger did not "transfer OxyChem NY's CERCLA liability exclusively to ERH to the exclusion of [OCC Texas] or any other entity." Compl. at 25. But the law in the Third Circuit is plain on this point: "Construing a contract and making law without finding the necessary facts constitutes advisory opinion writing, and that is **constitutionally forbidden**." *Step-Saver*, 912 F.2d at 648–49 (emphasis added). Plaintiffs' two requested declaratory judgments: (1) that "Any purported transfer or allocation of OxyChem NY's CERCLA liability

13

exclusively to ERH to the exclusion of [OCC Texas] or any other entity is precluded by CERCLA," and (2) that OCC Texas "is jointly and severally liable for OxyChem NY's CERCLA liabilities," Compl. at 25 ¶¶1–2, each presuppose a liability issue (that OxyChem NY is liable in contribution to the Plaintiffs) that has not been proved. And that liability issue cannot be proved here because that claim is pending in *21st Century Fox*. *Compare Step-Saver*, 912 F.2d at 648-49 (holding such a declaratory judgment not ripe because it seeks an impermissible advisory opinion).

In fact, this claim could only become ripe *if* the following entirely hypothetical "string of events" all occurred. *Mkt. St.*, 900 F. Supp. 2d. at 534.

(1) First, Plaintiffs must *prevail* on the underlying contribution claim against OxyChem NY. Before Plaintiffs can recover a single dollar from OCC Texas (indirectly, because of the declaratory judgment they seek), Plaintiffs first need a judgment that OxyChem NY is liable to them in contribution. But that has yet to be determined. And it **cannot be** determined here, because OxyChem NY is not a party. Instead, its liability will be established only *if* Plaintiffs *prove their claims* in the first-filed action, *21st Century Fox*.[4] *See also* Part II, *infra.*

---

[4] Plaintiffs have not yet filed contribution claims in *Givaudan*. And, as a matter of law, there was *no* determination of ERH's contribution liability to these Plaintiffs in *Alden Leeds*. That action challenges only the validity of a settlement by the United States with some, but not all, of the Plaintiffs here.

14

Because the question whether OxyChem NY is (or is not) liable to Plaintiffs for contribution remains unanswered, the second-order question whether OCC Texas is liable to Plaintiffs *because of* OxyChem NY's claimed liability is not ripe. *See Step-Saver*, 912 F.2d at 647–48 (holding declaratory action unripe where declaratory action was "based on a contingency" and would not conclusively adjudicate the parties' rights).

(2) After that, even assuming a liability judgment was entered finding that OxyChem NY owed Plaintiffs CERCLA contribution, Plaintiffs could be injured *only if* OxyChem NY (now renamed ERH) could not pay the judgment. Again, Plaintiffs offer only contingent and rank speculation. They speculate that "a divisional merger is **sometimes** the first step of a 'Texas Two-Step' [and the] second step is **usually** some type of action, such as a bankruptcy filing," and "has been implemented recently to ring-fence major tort liabilities, including harm from **mesothelioma and asbestos**…" Compl. ¶20 (emphasis added); *see also id.* ¶79 (alleging divisional mergers are "often" the first step in the Texas Two-Step, a tactic known to be employed in attempts to shed major liabilities."); *id.* at ¶9 (same). But the facts Plaintiffs plead raise no plausible inference that this risk will ever occur. If anything, the allegations support an equally plausible (and opposite) inference: that OxyChem NY does *not* have contribution liability to Plaintiffs given the enormous amount of work the Complaint admits OxyChem NY has already performed.

15

*Compare Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but not shown that the pleader is entitled to relief" and summarizing the holding of *Twombly*). Here, the Complaint pleads that OxyChem NY has performed remedial work and incurred hundreds of millions of dollars in response costs repeatedly, robustly, and without ever alleging it lacked any ability to pay. The Special Master, in fact, denied earlier these Plaintiffs' request for discovery on OxyChem NY's alleged ability to pay when Plaintiffs sought it, finding that OxyChem NY had never pled it lacked the ability to do so. *See* ECF 1380 in *21st Century Fox* (Decision of Special Master Granting in Part and Denying in Part SPG's Motion to Compel) at 12. Plaintiffs' speculation that because others (including themselves) have tried to shed *their own* CERCLA liabilities, ERH will eventually be unable to pay for OxyChem NY's *unproved* liability states no claim that is ripe for relief.

(3) Next, Plaintiffs would have to sue OCC Texas for contribution and would have to prevail by showing that Plaintiffs overpaid their fair share of CERCLA response costs.[5] *See, e.g., United States v. Atl. Rsch. Corp.,* 551 U.S. 128, 138–39

---

[5] Plaintiffs may protest that Plaintiffs have filed claims for contribution against ERH in other proceedings. But those claims were not against OCC Texas, and Plaintiffs' claims to different corporations in no way makes a subsequent claim against OCC Texas less speculative.

(2007) (CERCLA § 113 contribution plaintiff must show it "paid more than his or her proportionate share" or received "an inequitable distribution of common liability"). A new action is required because CERCLA authorizes only a declaratory judgment for the allocation of response costs. *See* Part III, below. Nothing in the statute authorizes one party, as here, to seek declaratory relief on the effect of another party's corporate reorganization. Plaintiffs have failed to assert the only authorized cause of action that would allow them to seek contribution liability from OCC Texas, so their claim is not ripe. In the words of the Third Circuit, "the fact that [Plaintiffs] ha[ve] not, in its declaratory judgment action, asked this court to find [OCC Texas] liable" for contribution renders the parties' interests "insufficiently adverse" to be ripe under Article III. *Step-Saver*, 912 F.2d at 648.

This sequence confirms that Plaintiffs' claims are not ripe. Before the divisional merger could ever injure Plaintiffs, Plaintiffs would first have to complete the above three steps. But Plaintiffs have not completed even the first step—proving that OxyChem NY owes them contribution liability. Their claim for declaratory relief is unripe—and will remain unripe—until they do. Accordingly, the Court must dismiss for lack of ripeness and subject matter jurisdiction.

17

**II.    The Complaint Must Be Dismissed under Rule 19 for Failure to Join a Required Party, OxyChem NY.**

Rule 12(b)(7) allows a party to move to dismiss for "failure to join a party under Rule 19." Rule 19, in turn, requires the joinder of any party essential to the determination of the claim. It operates in three steps. First, Rule 19(a) analyzes whether a party is "required." Fed. R. Civ. P. 19(a). If so, that party "must be joined as a party." *Id.*

**A.    OxyChem NY is a Required Party Under Rule 19.**

OxyChem NY is a required party under Rule 19. Parties "may be considered necessary parties where the potential liability of named … parties is contingent upon a determination of the absent [parties'] liability." *USA Roof Masters, LLC v. Liberty Mut. Mid Atl. Ins. Co.*, 721 F. Supp. 3d 372, 377 (E.D. Pa. 2024), reconsideration denied, No. 22-cv-1813, 2024 WL 1699563 (E.D. Pa. Mar. 20, 2024). Just so here. OxyChem NY's alleged "CERCLA liabilities" are the sole stated basis for the declaratory judgment Plaintiffs seek against OCC Texas. *See* Compl. at 25 ¶2 (requesting the Court "enter a declaratory judgment that…OxyChem TX *is jointly and severally liable for OxyChem NY's CERCLA liabilities.*").

**B.    Was Joinder of OxyChem NY Feasible?**

Next, Rule 19 asks whether joinder of the Required Party is "feasible." One of two things is true. Either (a) Plaintiffs claim that joining OxyChem NY was *not* feasible because of the stay in *21ˢᵗ Century Fox*, in which case dismissal is required

18

by Rule 19(b), or (b) Plaintiffs contend it *was* feasible to join OxyChem NY, in which case no purpose is served by this action, and Plaintiffs must proceed (if at all) in *21st Century Fox*. We address both possibilities below.

### 1. Does the Stay in 21st Century Fox Affect "Feasibility"?

Plaintiffs allege that this Court has federal question jurisdiction because Plaintiffs' claim arises under CERCLA. Compl. ¶30. OxyChem NY is also pursuing CERCLA contribution claims against Plaintiffs (and defending their contribution counterclaims against it) in *21st Century Fox*, a case pending in this Court and stayed by its Order. Accordingly, subject to the ripeness issues raised in Part I, adding OxyChem NY as a party would not divest the Court of any subject matter jurisdiction it otherwise has. *Compare* Rule 19(a)(1) (requiring joinder of required party where joinder "will not deprive the court of subject-matter jurisdiction.").

No part of the stay in *21st Century Fox* relieves Plaintiffs of their obligation to comply with Rule 19 by joining OxyChem NY, the party whose liability is at the heart of Plaintiffs' sought declaratory relief. *See e.g., Boat Basin Inv'rs, LLC v. First Am. Stock Transfer, Inc.,* No. 03-cv-0493, 2003 WL 282144, at *10 (S.D.N.Y. Feb. 7, 2003) ("[T]he fact that a necessary party is currently the subject of a stay … does not result in joinder being not feasible pursuant to Rule 19(b).").

### 2.    If Joinder is Infeasible, Rule 19(b) Mandates Dismissal.

If, however, Plaintiffs argue that the stay in *21st Century Fox* made joinder of OxyChem NY infeasible, then Rules 12(b)(7) and 19(b) mandate dismissal.

The Court cannot, "in equity and good conscience," Fed. R. Civ. P. 19(b), proceed in this action to decide that OxyChem NY has CERCLA liabilities to these Plaintiffs without also affording OxyChem NY the right to appear to dispute that those liabilities exist. *See Seashore Asphalt Corp. v. Pigliacelli*, No. 21-cv-11920, 2022 WL 248102, at *7 (D.N.J. Jan. 27, 2022) (holding that an absent party was indispensable where "judgment … against Defendant would require the Court to first determine whether [the absent party] breached its contract" and would therefore "have the practical effect of prejudicing" the absent party in parallel proceedings). Permitting this claim to proceed in OxyChem NY's absence risks serious and potentially irretrievable prejudice to OxyChem NY, not least by purporting to determine that it has contribution liabilities to these Plaintiffs in an action where it is not a party and cannot defend itself. *See e.g., Nichols v. Rysavy*, 809 F.2d 1317, 1333 (8th Cir.1987) ("In short the [absent party's] liability cannot be tried behind its back.") (quoting *Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 375 (1945)) (internal quotations omitted). Finally, allowing this claim to proceed without OxyChem NY risks of inconsistent liability findings. The same contribution liability Plaintiffs assert here against OxyChem NY is pending in *21st Century Fox*, where

20

Plaintiffs' liability claims have been stayed by order of the Court. If the Court were to allow Plaintiffs to proceed on the same liability issue here, in OxyChem NY's absence, it might well find itself confronting a different factual record—supporting different fact findings—when OxyChem NY is freed to defend itself in *21st Century Fox*. Accordingly, if Plaintiffs maintain is it not feasible to join OxyChem NY, their action must be dismissed under Rule 12(b)(7).

### 3.    If Joinder is Feasible, No Purpose is Served by This Action.

On the other hand, if Plaintiffs now concede it *is* feasible to join OxyChem NY, then no purpose was served by filing this new case.

A more expedient approach was readily available: Plaintiffs could have moved to lift the stay in *21st Century Fox*, seeking leave to amend to join OCC Texas as the target of the declaratory judgment they seek. The Court could then have considered, in an orderly and efficient fashion, whether the proposed amendment was futile because the claims asserted are not ripe. *Compare* Part I. It could also have assessed whether the new declaratory judgment action should proceed or, instead, should be dismissed under the Declaratory Judgment Act because OxyChem NY's CERCLA liabilities are pending in *21st Century Fox* and have not yet been resolved at trial. *Compare* Part IV, *infra*.

In the end, *Seashore* confirms that no part of Rule 19 permits Plaintiffs to proceed here without joining OxyChem NY, a required party. This Court should not

21

"sanction Plaintiffs' attempt to circumvent the [*21st Century Fox*] stay, and engage in piecemeal litigation," especially when "the Rule 19(b) factors collectively weigh in favor of finding [OxyChem NY] indispensable*." Seashore*, 2022 WL 248102, at *9. Put directly, if the *21st Century Fox* stay makes joinder of OxyChem NY infeasible, then this action must be dismissed under Rules 12(b)(7) and 19(b) for failure to join OxyChem NY, a required and indispensable party. If joining OxyChem NY is feasible, then this action should be dismissed under the Declaratory Judgment Act as superfluous and Plaintiffs should be directed to seek appropriate relief in *21st Century Fox*. Part IV. Either way, "Plaintiffs' case cannot proceed absent" OxyChem NY. *Seashore*, 2022 WL 248102, at *9.

### III.    Plaintiffs Fail to State a Claim Because § 107(e) Provides No Right of Action.

Plaintiffs request a declaratory judgment under CERCLA § 107 that OxyChem NY's corporate restructuring does not divest OCC Texas of CERCLA liability. Compl. ¶¶98–101; *id.* at 25 ¶2. This fails to state a claim for relief and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Plaintiffs lodge this claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* ¶ 96. But "the Declaratory Judgment Act is procedural only," *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937), and "presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). "It creates a remedy, not rights." *Malhan v. Sec'y United States Dep't of*

*State*, 938 F.3d 453, 457 n.3 (3d Cir. 2019). As this Court has ruled, the requirement for "an actual case or controversy" applies with full force to "a party seeking declaratory judgment … in the context of CERCLA." ECF 968 in *21ˢᵗ Century Fox* (Order Granting in Part and Denying in Part SPG's Motion to Dismiss) at 5 (quoting *Reichhold, Inc. v. U.S. Metals Refining Co.*, 522 F. Supp. 2d 724, 728–29 (D.N.J. 2007)).

To state a claim, Plaintiffs must therefore plead a valid private right of action that exists *outside* the Declaratory Judgment Act. Section 107 provides no such right, so Plaintiffs' claim must be dismissed.

Plaintiffs cannot rely on § 107(e)(1). *See* Compl. ¶101. Section 107(e)(1) states:

> (e) Indemnification, hold harmless, etc., agreements or conveyances; subrogation rights
>
> > (1) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1).

## A.    No Allegation of Conveyance or Transfer

First, Plaintiffs do not allege a fundamental element of § 107(e): the existence of a transfer or conveyance of liabilities. The Complaint does not allege OxyChem

23

NY's liabilities were conveyed anywhere: it alleges those liabilities are where they always were, in ERH, which has succeeded to them (under a new name) by virtue of OxyChem NY's merger with Snowcone, LLC. Compl. ¶¶81-82. Even if Section 107(e) created a private right of action (it does not), under their own Complaint, Plaintiffs do not allege a conveyance or transfer occurred, so they fail to state any claim under § 107(e) or for a valid declaratory judgment as to its effect.

### B.    No Private Right of Action Under § 107(e).

More fundamentally, Section 107(e) does not authorize *any* affirmative claim for relief. *Compare* 42 U.S.C. § 9607(e) ("no indemnification, hold harmless, or similar agreement *shall be effective* to transfer from the owner…to any other person the liability imposed under this section.") *with e.g.* 42 U.S.C. § 9607(a) (listing persons who "*shall be liable for*…all costs of removal or remedial action incurred by the United States Government…[and] any other necessary costs of response incurred by any other person…") and 42 U.S.C. § 9613 ("Any person *may seek contribution from any other person who is liable or potentially liable.*") (emphasis added). Instead, as detailed below, § 107(e) at most provides a claimed *defense* to liability on this basis.

There is no credible argument that § 107(e)(1) provides an *implied* right of action. The Supreme Court strongly disfavors implied rights of action, holding one exists only where there is clear congressional intent for a private claim, shown by

the express text and structure of the statutory scheme. *See Alexander v. Sandoval*, 532 U.S. 275, 286–88 (2001) ("We therefore begin (and find that we can end) our search for Congress's intent with the text and structure of Title VI."); *see also California v. Sierra Club*, 451 U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide").

*Alexander* and *Sierra Club* are dispositive: "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander*, 532 U.S. at 289 (quoting *Sierra Club*, 451 U.S. at 294). Section 107(e)(1) exclusively focuses on the "person regulated" – that is, the PRP who engages in an indemnification-like agreement for certain purposes. Section 107(e)(1) nowhere suggests a private right to enforce the proscription on such agreements by other PRPs such as Plaintiffs. It *does not even mention* other PRPs, nor does it provide (as Congress does when it creates a claim) that anyone "shall be liable' or that a person "may seek relief from" the affected party. Instead, § 107(e)(1) "is the kind of general ban" that the Supreme Court has routinely rejected as providing a private right of action. *Sierra Club*, 451 U.S. at 294.

25

Section 107(e)(1) fares no better under the multi-factor test for implied rights of action the Supreme Court used to apply under *Cort v. Ash*.[6] That test asks (1) whether the statute recognizes a "class for whose especial benefit the statute was enacted," (2) whether there is "any indication of legislative intent" favoring the creation or denial of an implied right, (3) whether an implied right would be "consistent with the underlying purposes of the legislative scheme," and (4) whether the proposed cause of action is "traditionally relegated to state law." 422 U.S. 66, 78 (1975).

As above, (1) § 107(e)(1) does not even *mention* a "class for whose especial benefit the statute was enacted." The failure to even *recognize* a class of beneficiaries encompassing Plaintiffs is particularly fatal given the fact that, when Congress intends private parties to have cognizable claims CERCLA, it enabled them explicitly. *See* 42 U.S.C. § 9607(a)(4)(B) (allowing "***any person***" to pursue cost recovery action under certain circumstances) (emphasis added); *see also id.* § 9613(f)(1) (providing that "any person may seek contribution from any other person who is liable…").

---

[6] Though not explicitly overruled, the Supreme Court has narrowed *Cort v. Ash* in subsequent decisions, all of which have emphasized the primacy of the plain, statutory text as dispositive of Congressional intent. *See e.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76 (1979); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 23–24 (1979).

26

Worse, (2) the context of CERCLA provides an "indication of legislative intent" that *precludes* the free-form declaratory judgment, divorced from CERCLA's statutory text, that Plaintiffs try to raise. CERCLA ***expressly provides*** for declaratory judgment actions but does so ***only*** for declarations "on ***liability for response costs or damages***." 42 U.S.C. § 9613(g)(2)(B) (emphasis added). The provision does *not* authorize anyone to seek declaratory judgment on the effect of a divisive merger, an indemnity agreement, or any of the other matters discussed in § 107(e). The provision of an express remedy—indeed, for *declaratory judgment*— "suggests that Congress intended to preclude others." *Alexander*, 532 U.S. at 290. Congress knows how to create claims for liability when it means to do that. It has done so in § 107(a) and § 113. But no similar language appears anywhere in § 107(e), confirming Congress had no intent to provide *any* private right of action under that provision, at minimum by negative implication from the *express* provision of private rights and declaratory judgment causes of action elsewhere in CERCLA's statutory scheme. *See Borough of Longport v. Netflix, Inc.*, 94 F.4th 303, 308 (3d Cir. 2024) (where "the Legislature included an express right of action … we must hesitate to recognize a remedy not expressly included.").

Because "[t]he language of the statute and its legislative history do not suggest that [CERCLA § 107(e)] was intended to create federal rights for the especial benefit of a class of persons … it is unnecessary to inquire further to determine whether the

27

purpose of the statute would be advanced by the judicial implication of a private action or whether such a remedy is within the federal domain of interest." *Sierra Club*, 451 U.S. at 297–98. "These factors are only of relevance if the first two factors give indication of congressional intent to create the remedy." *Id.* at 298. The absence of any "such indication" of such congressional intent in the text or structure of the statute here is "dispositive." *Id.* at 297–98.[7]

### C.    Rather, Section 107(e) Provides a Rebuttal Defense.

No reported decision exists granting an affirmative declaratory judgment claim for liability under § 107(e). Instead, courts evaluate the effect of § 107(e) when resolving claims that seek to establish a PRP's ultimate liability for response costs – the sole ground for which CERCLA authorizes declaratory judgments. *See* 42 U.S.C. § 9613(g)(2)(B); *see also Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 880–81 (7th Cir. 2015) (analyzing impact of § 107(e) in contribution action under § 113(f)(3)(B) and related declaratory judgment claim); *Wisconsin Gas LLC v. Am. Nat. Res. Co.*, No. 20-cv-1334, 2023 WL 2652079, at *4 (E.D. Wis. Mar. 27, 2023) (same).

---

[7] Plaintiffs are familiar with the limited statutory authorization for a declaratory judgment under CERCLA. They pleaded for declaratory judgment on liability for response costs against ERH in *21st Century Fox*. *See, e.g.*, ECF 728 in 21st Century Fox (BASF Catalysts Answer and Counterclaims) at 54–61; ECF 660 in 21st Century Fox (Textron, Inc. Answer and Counterclaims) at 87–94.

28

Put differently, the proper method to raise § 107(e) would be for Plaintiffs to sue OCC Texas and ERH for contribution under § 113(g)(2)(B). If and only if ERH or OCC Texas resisted the claim by citing a contract purporting to transfer CERCLA liability somewhere else, *then* Plaintiffs could raise § 107(e) to foreclose such an argument.

But Plaintiffs have not raised a proper claim for contribution declaratory relief against OCC Texas. *Compare* Compl. at 25 ¶2 (alleging only that OCC Texas is liable *for OxyChem NY's* CERCLA liabilities, if any). Nor do Plaintiffs allege that the internal corporate restructuring conveyed or transferred CERCLA liabilities away from OxyChem NY (now renamed ERH). *Compare* Compl. ¶¶81-82. Plaintiffs have thus skipped two critical steps Congress requires to make § 107(e) relevant. And there is no step, anywhere in the statute, that permits them to seek an affirmative declaratory judgment of liability *under* Section 107(e) because the statute provides no right of action for liability under it.

For all these reasons, the Complaint fails to state a claim for relief and must be dismissed under Rule 12(b)(6). *See Byers v. Intuit, Inc.*, 564 F. Supp. 2d 385, 398 (E.D. Pa. 2008), *aff'd*, 600 F.3d 286 (3d Cir. 2010).

29

**IV.    Because this Lawsuit Duplicates Claims and Common Issues in Two Other Cases, the Court Should Exercise its Discretion and Dismiss it.**

The final ground on which the Court should dismiss the case is for the sake of judicial and party economy. This is the *fourth* case about liabilities at the Site. Entertaining it now, rather than requiring consolidation of the common liability issues, would unfairly precipitate piecemeal litigation of common issues.

Permitting this action to proceed prejudices OCC Texas, because this lawsuit seeks to compel it to defend—by proxy—the liability of another company, OxyChem NY. And because Plaintiffs seek here a declaration that OxyChem NY *has* CERCLA liabilities, *see* Compl. at 25, in a case where OxyChem NY (now, ERH) is not a party, the risk of prejudice to OxyChem NY (and an improper advisory opinion on OxyChem NY's liability) is manifest.

Nor does any of this make sense. A vehicle is readily available to consolidate the resolution of these questions efficiently in *21ˢᵗ Century Fox*, where the parties already have contribution claims pending. Accordingly, this Court should exercise its discretion under the Declaratory Judgment Act to dismiss the case entirely.

On this point, the Third Circuit is clear in its mandate: "A federal court should … decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *Summy*, 234

F.3d at 135.[8] District courts in this circuit routinely "exercise their discretion to decline proceeding with declaratory judgments when they duplicate other claims." *See, e.g.*, *Butta v. GEICO Casualty Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019); *Vincent Cusumano Architect P.C. v. Berkshire Hathaway Direct Ins. Co.*, No. 23-cv-22970, 2025 U.S. Dist. LEXIS 60164, at *9 (D.N.J. Mar. 29, 2025) (same). Dismissing this case so the Court can decide the effect of § 107(e)(1) in an action for ultimate liability under CERCLA is consistent with federal court practice, which unanimously uses § 107(e)(1) as a *rebuttal* to a PRP's attempt to avoid CERCLA liability by invoking agreements invalidated by its terms. *See, e.g.*, *Beazer E., Inc.*, 802 F.3d at 880–81; *Wisconsin Gas*, 2023 WL 2652079, at *4.

Plaintiffs can litigate the effect of CERCLA § 107(e)(1) in *21st Century Fox*, where they already have contribution claims pending. There was and is no need for them to foment a *fourth* action to raise the same claim—albeit in an action that is two steps removed from the party alleged to be liable, OxyChem NY.

---

[8] The Third Circuit is joined by virtually every circuit in urging lower courts to decline an action for declaratory judgment where, as here, the action duplicates one already pending that can entirely resolve liability. *See e.g., Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992); *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019); *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 354 –55 (9th Cir. 1988); *State Farm Mut. Auto. Ins. v. Bonwell*, 248 F.2d 862, 867–68 (8th Cir. 1957); *ARW Expl. Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir. 1991); *Metropolitan Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 62 (1st Cir. 1984).

Considering this, it is telling that while Plaintiffs insist here they want to decide this question now, they moved to stay all proceedings raising the same liability issues—including their own contribution, cost recovery, and declaratory judgment counterclaims—in *21st Century* Fox. *See* ECF 1943 in *21st Century Fox* (SPG Motion to Stay). It would be manifestly unfair to permit them to pursue identical claims here while *21st Century Fox* remains stayed. Doing so would leave the party allegedly liable—OxyChem NY—with its hands tied, hamstringing OCC Texas's ability to refute that alleged liability in the process. This one-sided litigation should not proceed when an action that affords due process to all affected parties is available in *21st Century Fox*.

Plaintiffs should be familiar with this argument – they raised the same point in arguing strenuously that this court should stay *21st Century Fox* and *Givaudan* as a matter of judicial and party economy. In *Givaudan*, Plaintiffs argued that "[b]y filing the complaint here … rather than seeking to amend its [*21st Century Fox*] pleadings," OxyChem NY "initiated duplicative litigation in contravention of ... the rule against claim-splitting." ECF 98 in *Givaudan* (Brief in Support of SPG Defendants' Motion to Stay) at 1.[9] But one point is plain: Plaintiffs here have now

---

[9] *See also id*. at 2 ("Should this case proceed separately from [*21st Century Fox*], the Court and the parties risk inconsistent rulings and needlessly repeating efforts that are currently stayed, including the very same burdensome and contentious discovery that has required the attention of the Court and a Special Master over the last four years."). Plaintiffs also argued that *Givaudan* should be stayed "because the outcome

32

done *exactly* what they condemned in their own prior pleadings. Rather than move to lift the stays in *21ˢᵗ Century Fox* and *Givaudan*, they filed a fourth, brand new action raising the same fundamental issue of liability. It makes no difference that, in this case, they seek to bring just one new party—OCC Texas—to the table. They could have sought leave to do that in either of the prior-filed cases.

This is exactly the sort of "duplicative litigation" Plaintiffs decried in the stay motions. And the Court granted both because it concluded doing so served judicial and party economy. *See* ECF 2351 in *21ˢᵗ Century Fox* (Text Order Granting Stay); ECF 149 in *Givaudan* (Text Order Granting Stay). Here, it can and should go further by exercising its discretion under the Declaratory Judgment Act by dismissing this duplicative action and directing Plaintiffs to seek any relief they can allege, properly, in *21ˢᵗ Century Fox*.

---

of [*Alden Leeds*] could substantially affect it." *Id.* at 1. "Instead, in the interests of justice and judicial economy, the Court should stay this matter alongside" *21ˢᵗ Century Fox*. *Id.* at 2.

33

## CONCLUSION

For all these reasons, Plaintiffs' claims against OCC Texas should be dismissed or stayed.

Dated: March 24, 2026

Respectfully submitted,

MCDERMOTT WILD LLC

By:    s/ *John J. McDermott*
John J. McDermott, Esq.
(jmcdermott@mcdermottwild.com)
Lauren Krohn Wild, Esq.
900 Haddon Ave., Suite 233
Collingswood, NJ 08108
Tel. (856) 746-7962

GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel. (713) 650-8805
Kathy D. Patrick, Esq.*
(kpatrick@gibbsbruns.com)
Anthony N. Kaim, Esq.*
Kevin A. Hoang, Esq.*

*Attorneys for Defendant*
*Occidental Chemical Corporation*

**Pro hac vice* application to be filed.

34