# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK VICINAGE

BASF CATALYSTS LLC, et al.,

    Plaintiff,

  -v-

OCCIDENTAL CHEMICAL
CORPORATION,

    Defendant.

Hon. Madeline Cox Arleo
Hon. Leda Dunn Wettre

Civil Action No. 2:26-cv-01226

<u>Return Date</u>: May 4, 2026

Oral Argument Requested If
Opposition Filed

---

## NOKIA OF AMERICA CORPORATION'S
## BRIEF IN SUPPORT OF MOTION TO INTERVENE

---

**LOWENSTEIN SANDLER LLP**
Michael D. Lichtenstein, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2408
mlichtenstein@lowenstein.com
*Counsel for Intervenor-Plaintiff*
*Nokia of America Corporation*

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

    A.    The DASS .................................................................................... 2

    B.    Massive Projected Cleanup Costs ............................................... 4

    C.    Defendant OxyChem TX .............................................................. 5

    D.    Nokia ........................................................................................... 8

    E.    Other Notable Contributors: PVSC and Municipalities ............. 8

    F.    OxyChem NY Litigation .............................................................. 9

    G.    OxyChem's NY's Divisive Merger ............................................. 11

LEGAL STANDARD ............................................................................................... 13

LEGAL ARGUMENT .............................................................................................. 15

I.    Nokia May Intervene in this Action As Of Right. ....................................... 15

    A.    Nokia's Motion Is Timely. ........................................................ 15

    B.    Nokia Has Protectable Interests That May Be Impaired or Impeded by This Action. ............................................................ 16

    C.    Nokia's Interests Are Not Adequately Represented By An Existing Party In The Litigation. ........................................... 17

II.    Nokia May Also Intervene Permissively In This Action. ............................ 19

CONCLUSION ........................................................................................................ 19

-i-

# TABLE OF AUTHORITIES

**PAGES**

**Cases**

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
  701 F.3d 938 (3d Cir. 2012) ...............................................................16

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022).............................................................................17

*Harris v. Pernsley*,
  820 F.2d 592, 596 (3d Cir. 1987)), *cert. denied sub nom. Castille v.
  Harris*, 484 U.S. 947 (1987) ...............................................................14

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) ...............................................................16

*In re LTL Mgmt., LLC*,
  64 F.4th 84 (3d Cir. 2023) ..................................................................17

*In re Maxus Energy Corp. et al.*,
  No. 16-11501 (Bankr. D. Del.) ..............................................................5

*N.J. Dep't of Env't Prot. v. Occidental Chem. Corp.*,
  No. ESX-L-9868-05, 2011 WL 7394736 (N.J. Super. Ct. Law
  Div.) .......................................................................................................6

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
  No. 2:18-cv-11273 (D.N.J.) ..................................................6, 9, 10, 16

*Occidental Chemical Corp. v. Givaudan Fragrances Corp.*,
  No. 2:23-cv-01699 (D.N.J.) ...................................................10, 11, 16

*Pennsylvania v. President U.S.*,
  888 F.3d 52 (3d Cir. 2018) ..................................................................17

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
  223 F.R.D. 326 (D.N.J. 2004)..............................................................15

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972).............................................................................17

*United States v. Alcan Aluminum, Inc.*,
   25 F.3d 1174 (3d Cir. 1994) ...................................................................14, 15, 16

*United States v. Alden Leeds, Inc.*,
   No. 2:22-cv-07326-MCA-LDW (D.N.J.) ....................................................*passim*

*United States v. Alden Leeds*,
   Nos. 25-1049, 25-1272 (3d Cir.) .......................................................8, 11, 12, 18

*United States v. Occidental Chem. Co. et al.*,
   No. 89-5064 (D.N.J.) .................................................................................7

*United States v. Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir. 1994) ..........................................................................14

*United States v. Territory of Virgin Islands*,
   748 F.3d 514 (3d Cir. 2014) ......................................................................14

*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016) ......................................................................15

*Wolf by Wolf v. Procter & Gamble, Co.*,
   555 F. Supp. 613 (D.N.J. 1982).................................................................15

**Statutes**

42 U.S.C. § 9604(e) ...................................................................................13

42 U.S.C. § 9607(a) .................................................................................9, 10

42 U.S.C. § 9613(f).....................................................................................9

42 U.S.C. § 9613(i) ..............................................................................*passim*

**Rules**

Fed. R. Civ. P. 24(a)............................................................2, 13, 14, 15, 18

Fed. R. Civ. P. 24(b) ...............................................................2, 14, 15, 19

**Regulations**

40 C.F.R. § 300.5 ........................................................................................2

## <u>INTRODUCTION</u>

Nokia of America Corporation ("Nokia") respectfully moves to intervene in this action challenging an intra-corporate transaction designed to strand billions of dollars of environmental liabilities in an entity with no apparent resources to satisfy them. Nokia has a direct stake in the outcome. As a party facing potential joint and several liability for one of the costliest Superfund cleanups in history—the Diamond Alkali Superfund Site ("DASS")—Nokia cannot stand by while the overwhelmingly responsible party restructures itself to escape accountability for the contamination it caused.

Nokia's interests are threefold. First, Nokia must protect its ability to recover contribution and response costs from Occidental Chemical Corporation, a New York corporation ("OxyChem NY")—the successor to the Diamond Alkali facility operators whose discharges created virtually all dioxin contamination at the DASS— and from Occidental Chemical Corporation, a Texas Corporation ("OxyChem TX"), which absorbed all of OxyChem NY's revenue-generating assets through a corporate restructuring and, thus, must bear those liabilities as OxyChem NY's successor. Second, Nokia must ensure that any judgment or settlement does not impair its pending claims against OxyChem NY in related litigation. Third, Nokia must guard against OxyChem NY's massive DASS liabilities being shifted onto Nokia and other parties who bear only a fraction of responsibility for the contamination.

Nokia satisfies all requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) and Section 113(i) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(i), as well as for permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). The Court should grant this motion and permit Nokia to participate as a party to ensure its interests are fully protected.

## BACKGROUND

### A.    The DASS

The DASS spans approximately 5,100 acres-roughly 8 square miles-across Essex, Bergen, Hudson, and Passaic Counties, New Jersey. The United States Environmental Protection Agency ("EPA") has organized the DASS into several geographic "operable units" ("OUs").[1] *See* EPA, *Community Involvement Plan for Diamond Alkali Superfund Site, Operable Unit 1 (OU1)* (SEMS No. 704638), Figure 2 (July 2024).[2]

- OU1 is the land of the former Diamond Alkali facility that produced, among other products, Agent Orange, a byproduct of which is 2,3,7,8-Tetrachlorodibenzo-p-Dioxin (2,3,7,8-TCDD), a form of dioxin and a highly

---

[1] An OU is a "discrete action" that "may address geographical portions of a site, specific site problems, or initial phases of an action, or may consist of any set of actions performed over time or any actions that are concurrent but located in different parts of a site." *See* 40 C.F.R. § 300.5.

[2] Available at https://semspub.epa.gov/work/02/704638.pdf.

toxic substance. *See* EPA, *Record of Decision for Diamond Alkali Superfund Site Operable Unit 1 (OU1)* ("OU1 ROD") ii, 1–2 (January 2025).[3]

- OU2 is the lower 8.3 miles of the Lower Passaic River Study Area (the "LPRSA") (before emptying into Newark Bay), an area of significant sediment contamination. *See* EPA, *Record of Decision for the Lower 8.3 Miles of the Lower Passaic River Part of the Diamond Alkali Superfund Site* ("OU2 ROD") § 1 (Mar. 3, 2016).[4]

- OU4 is the 17-mile LPRSA, extending from Dundee Dam to the Passaic River's discharge into Newark Bay. While OU4 thus overlaps with OU2, it does not include the OU2 sediments subject to OU2 activities. *See* EPA, *Record of Decision for an Interim Remedy in the Upper 9 Miles of the Lower Passaic River Study Area, OU4 of the Diamond Alkali Superfund Site* ("OU4 ROD") § 1 (Sept. 2021).[5]

- OU3 is the Newark Bay Study Area, a tidal bay at the confluence of the Passaic and Hackensack Rivers. *See id.* at § 2.1.3.

---

[3] Available at https://semspub.epa.gov/work/02/747012.pdf.

[4] Available at https://semspub.epa.gov/work/02/396055.pdf.

[5] Available at https://semspub.epa.gov/work/02/630399.pdf.

## B.    Massive Projected Cleanup Costs

The interim and final remedies selected for portions of the DASS are already projected to total several billion dollars—placing this cleanup among the costliest in Superfund history.

In 2016, EPA chose a final remedy for OU2 sediments involving excavating 3.5 million cubic yards of contaminated sediment and installing a "bank-to-bank" cap. *See* OU2 ROD, Declaration for the Record of Decision, at 2. At the time, EPA projected this remedy to cost $1.38 billion. *Id.* at 88. This estimate jumps to $1.89 billion after adjusting for inflation as of February 2026.[6]

In 2021, EPA selected an "interim," non-final remedy for the upper 9 miles of OU4 requiring excavating sediment source areas of 2,3,7,8-TCDD (a particularly toxic form of dioxin), among other contaminants. *See* OU4 ROD, Declaration for the Record of Decision, at ii. Although the projected cost of the OU4 interim remedy was $441 million in 2021, *id.* at 77, adjusting for inflation as of February 2026 brings it to $525 million. Accordingly, the inflation-adjusted costs of the final OU2 and interim OU4 remedies total $2.42 billion—among the highest in Superfund history.

A truer cost projection will emerge only after remedy design is complete—an event still years away for the selected LPRSA remedies, subjecting costs to

---

[6] Adjusting for inflation using CPI-U from March 2016 to February 2026 results in a 37% cost increase, as determined using the U.S. Bureau of Labor Statistics CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

additional inflationary risk. Moreover, these projections do not account for: (1) the final OU4 remedy EPA will select after completion of the interim remedy; (2) the substantial OU3 (Newark Bay) costs, estimated by the United States at up to *$4.4 billion*; or (3) natural resource damages, estimated by the United States at least *$5.5 billion*. *See In re Maxus Energy Corp. et al.*, No. 16-11501, ECF No. 2378 (Notification and Correction Regarding Proof of Claim of the United States of America) at ¶¶ 5–6, n.2 (Bankr. D. Del. Mar. 18, 2021) (estimating future OU3 response costs up to $4.4 billion and natural resource damages of at least $5.5 billion). All told, the United States's cost projections exceed *$12 billion.*

### C.    Defendant OxyChem TX

Defendant OxyChem TX's responsibility for LPRSA contamination is categorically different—and vastly greater—than that of any other party.

During the recent transactions at issue in this case, OxyChem TX was formed and absorbed all of OxyChem NY's productive assets shortly after OxyChem NY was purportedly merged out of existence. *See infra* pp. 11–12. Both entities' corporate predecessors owned and operated the Diamond Alkali facility at 80-120 Lister Avenue in Newark, which manufactured Agent Orange and its highly toxic byproduct, dioxin. Their discharges into the LPRSA are responsible for virtually all dioxin contamination in LPRSA sediments—identified as overwhelmingly the most toxic contaminant present. *See United States v. Alden Leeds, Inc.*, No. 2:22-cv-

07326-MCA-LDW (D.N.J.) ("*Alden Leeds*"), ECF-288-7 (Decl. of Michael Sivak in Support of Mot. to Enter Consent Decree) ("Sivak Decl.") ¶¶ 49–50 (Jan. 31, 2024). Indeed, EPA has stated in court filings that, absent the Diamond Alkali facility releases, the DASS might never have become a Superfund site, and if it had, the nature of any required cleanup would be uncertain. *Id.* ¶ 11.

Courts have repeatedly adjudicated OxyChem NY as the successor to the former Diamond Alkali facility owners and operators and their releases into the LPRSA. *See Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 2:18-cv-11273 (D.N.J.) ("*21st Century Fox*"), ECF No. 1105 at 6 (finding that OxyChem NY "is liable as a successor" to the entities that owned and operated the Diamond Alkali Plant from the mid-1940s to 1969); Order Partially Granting Plaintiffs' Motion for Partial Summary Judgment Against Occidental Chemical Corporation, Maxus Energy Corporation, and Tierra Solutions, Inc., *N.J. Dep't of Env't Prot. v. Occidental Chem. Corp.*, No. ESX-L-9868-05, 2011 WL 7394736 (N.J. Super. Ct. Law Div. July 19, 2011) (finding that OxyChem NY was successor by merger to owners and operators of the Diamond Alkali Plant from the mid-1940s to 1969 and was liable for the cleanup and removal costs associated with those predecessors' discharges).

Accordingly, EPA has long deemed OxyChem NY the overwhelmingly responsible party for DASS contamination. For decades, EPA has required

OxyChem NY to conduct significant investigation and cleanup work through orders

and agreements that, by their terms, bind OxyChem NY's successors and assigns.[7]

OxyChem NY is also the principal party performing work in OU3 (Newark Bay).

Administrative Order on Consent, CERCLA Docket No. 02-2004-2010 (Feb. 13,

---

[7] *See* Consent Decree, *United States v. Occidental Chem. Co. et al.*, No. 89-5064 (D.N.J. Nov. 19, 1990) (requiring OxyChem NY to implement OU1 interim remedy); https://semspub.epa.gov/work/02/88933.pdf; Administrative Order on Consent, CERCLA Index No. II-CERCLA-0117 (Apr. 20, 1994), https://semspub.epa.gov/work/02/85198.pdf (requiring OxyChem to investigate six-mile stretch of LPRSA); Administrative Settlement Agreement and Order on Consent, CERCLA Docket No. 02-2004-2011 (Apr. 6, 2004), https://sharepoint.ourpassaic.org/Public%20Documents/CPG%202004%20AOC%20for%20LPRSA.pdf, (requiring OxyChem NY, as a member of the Cooperating Parties Group ("CPG"), to fund and perform the remedial investigation and feasibility study of the LPRSA); Administrative Settlement Agreement and Order on Consent for Remedial Investigation and Feasibility Study, CERCLA Docket No. 02-2007-2009 (May 8, 2007), https://sharepoint.ourpassaic.org/Public%20Documents/2007%20CPG%20AOC%20for%20LPRSA%20RIFS%20Work%20signed%2099864.pdf (same); Administrative Settlement Agreement and Order on Consent for Removal Action, CERCLA Docket No. 02-2008-2020 (June 23, 2008), https://dep.nj.gov/wp-content/uploads/passaicdocs/oversight-records/aocs/2008aoc.pdf (requiring OxyChem to perform removal action of roughly 200,000 cubic yards of contaminated sediment in LPRSA near OU1); Unilateral Administrative Order for Removal Response Activities, *21st Century Fox*, ECF No. 476-6 (ordering OxyChem NY to remove roughly two feet of sediment and install a cap at river mile 10.9 containing particularly elevated levels of 2,3,7,8-TCDD and other hazardous substances from the Diamond Alkali facility and nearby areas); Administrative Settlement Agreement and Order on Consent for Remedial Design, CERCLA Docket No. 02-2016-2021 (Sept. 20, 2016), https://semspub.epa.gov/work/02/453915.pdf (requiring OxyChem to perform remedial design for OU2 remedy); Unilateral Administrative Order for Remedial Design for OU4 of the Diamond Alkali Superfund Site, CERCLA Docket No. 02-2023-2011 (Mar. 2, 2023), https://semspub.epa.gov/work/02/642227.pdf (ordering OxyChem NY to design OU4 interim remedy).

2004)[8] (requiring OxyChem NY to perform the remedial investigation and feasibility study ("RI/FS") for OU3).

### D.    Nokia

Like OxyChem NY and most Plaintiffs, Nokia received a General Notice Letter ("GNL") from EPA regarding potential LPRSA liability. But unlike most Plaintiffs—whom EPA deems eligible for cash-out settlements—EPA has designated Nokia a "work party" jointly and severally liable for funding the LPRSA cleanup despite being similarly situated with such parties. *See Alden Leeds*, ECF No. 307-1 (Decl. of Zakariah E. Sabatka), Ex. A (Apr. 1, 2024). This is a fundamentally different and far more onerous designation and, indeed, one that Nokia considers wrongful and is challenging on appeal. *See United States v. Alden Leeds*, No. 25-1049 (3d Cir.).

### E.    Other Notable Contributors: PVSC and Municipalities

Also among the significant historic sources of LPRSA contamination are PVSC and the 48 municipalities ("Municipalities") it serves. For decades, PVSC operated its interceptor line along the Passaic River in a manner inconsistent with its design and failed to properly maintain it, causing countless overflows and bypasses that discharged staggering volumes of untreated waste into the LPRSA. *See Alden*

---

[8] Available at https://sharepoint.ourpassaic.org/Public%20Documents/Administrative%20Order%20on%20Consent%20For%20Remedial%20Investigation%20and%20Feasibility%20Study.pdf.

*Leeds*, ECF No. 289-19 (Ex. 12, Part 20, Attachments M–S to Allocation Recommendation Report) at 79–88. One study estimates the total discharge at 1.2 trillion gallons—accounting for much of the contamination in OU2 sediments. *Id.* at 52–53.

EPA has likewise identified PVSC and the Municipalities as CERCLA-liable parties ineligible for cash-out settlement and responsible for "substantial contributions" to the cleanup. Alden Leeds, ECF No. 288-5 (Decl. of Alice Yeh) ¶¶ 28, 33 (Jan. 31, 2024); ECF No. 289-1 (Ex. 12, Part 2, Attachment A to Allocation Recommendation Report) at 4, 27. PVSC itself has warned that it and the Municipalities face "catastrophic monetary risk." Alden Leeds, ECF No. 288-16 (Comments Submitted by Non-Parties) at 102 (Jan. 31, 2024).

### F. OxyChem NY Litigation

OxyChem NY has sued Nokia and many others—including numerous Plaintiffs—seeking to shift DASS-related costs.

On June 30, 2018, OxyChem NY filed *21st Century Fox* against Nokia and over one hundred other parties, including numerous Plaintiffs. *21st Century Fox*, ECF No. 1 (Compl.) (June 30, 2018). OxyChem NY sought cost recovery, contribution, and declaratory judgment under CERCLA Sections 107(a) and 113(f) for response costs allegedly incurred and to be incurred in remediating the LPRSA. *Id.* ¶¶ 271–87. In 2019, the court dismissed certain claims, leaving claims for

CERCLA Section 107(a) cost recovery and Section 113(f)(3)(B) contribution. *21st Century Fox*, ECF No. 647 (Order) at 8–9, 12 (July 31, 2019). Nokia filed counterclaims against OxyChem NY for contribution, cost recovery, declaratory judgment, and breach of contract. *21st Century Fox*, ECF Nos. 675 (Nokia Ans. and Counterclaims) (Aug. 14, 2019), 1297 (Nokia Ans. and Defenses to Am. Compl. and Counterclaims) (July 27, 2021). Those claims remain pending.

On March 24, 2023, OxyChem NY filed *Occidental Chemical Corp. v. Givaudan Fragrances Corp.*, No. 2:23-cv-01699 (D.N.J.) ("*Givaudan*") against a subset of the *21st Century Fox* defendants, including, again, Nokia and several Plaintiffs. *Givaudan*, ECF No. 1 (Compl.) (Mar. 24, 2023). In this action, OxyChem NY seeks cost recovery under CERCLA Section 107(a) for costs that OxyChem NY allegedly has incurred and may incur under a 2023 unilateral administrative order issued by EPA. *Id.* ¶¶ 11–13, 28, 105–15. Responsive pleadings have not yet been filed in this action.

Both cases seek an equitable allocation of relative responsibility among Nokia, OxyChem NY, many Plaintiffs, PVSC, the Municipalities, and others for the billions in projected LPRSA cleanup costs. Both actions are currently stayed pending resolution of *Alden Leeds*.[9]

---

[9] *See 21st Century Fox*, ECF Nos. 2287 (Order) (Mar. 1, 2023), 2289 (Am. Administrative Termination Order) (Mar. 7, 2023), 2317 (Order) (June 12, 2023),

## G.    OxyChem's NY's Divisive Merger

Beginning in September 2025, OxyChem NY and its affiliates undertook a series of transactions that effectively severed OxyChem NY's massive DASS liabilities from all revenue-generating assets—a structure that threatens to leave those liabilities in an entity incapable of satisfying them.

On September 26, 2025, OxyChem NY merged into newly created Snowcone, LLC, a Texas limited liability company, and the resulting entity was renamed Occidental Chemical Company, LLC ("OCC Tex LLC"). (*See* Certification of Michael D. Lichtenstein, filed herewith ("Lichtenstein Cert."), Ex. A.) OxyChem NY apparently ceased to exist as a result. *See* Occidental Chem. Corp., DOS ID No. 29306 (N.Y. Dep't of State, Div. of Corps.).[10]

On September 29, 2025, OCC Tex LLC underwent a "divisive merger" under Texas law, splitting into: (1) OCC Tex LLC, immediately renamed Environmental Resource Holdings, LLC ("ERH"); and (2) newly formed OxyChem TX. (*See* Lichtenstein Cert., Ex. B); *United States v. Alden Leeds*, Nos. 25-1049, 25-1272 (3d Cir.), ECF Nos. 114 (OxyChem NY supplemental corporate disclosure statement stating that OxyChem NY "is now known as Environmental Resource Holdings,

---

2351 (Text Order) (Jan. 5, 2024); *Givaudan*, ECF No. 149 (Text Order) (Jan. 5, 2024).

[10] Available at https://apps.dos.ny.gov/publicInquiry/#search.

LLC"), 118 (OxyChem NY brief stating that ERH was "formerly Occidental Chemical Corporation").

OxyChem TX was apportioned all revenue-generating assets, tangible and intangible. ERH received no revenue-generating assets but was conveyed sole responsibility for all OxyChem NY liabilities—including the massive DASS liabilities—with remedial work to be managed by another subsidiary, Glenn Springs Holdings, Inc. *See* Joint Press Release, Berkshire Hathaway Inc. and OxyChem, Berkshire Hathaway Inc. to Acquire OxyChem (Oct. 2, 2025).[11]

On October 1, 2025, Occidental Petroleum Corporation ("OPC") agreed to sell OxyChem TX to Berkshire Hathaway—OPC's largest shareholder[12]—for $9.7 billion in cash. *Id*. The sale closed on January 2, 2026. *See* OPC, Current Report (Form 8-K) at 2 (Jan. 2, 2026).[13] Through its acquisition of OxyChem TX, Berkshire Hathaway acquired "all assets, rights, interests, Contracts, Intellectual Property and Permits and properties (in each case, whether tangible or intangible) of the Parent

---

[11] Available at www.oxy.com/news/news-releases/berkshire-hathaway-inc.-to-acquire-oxychem.

[12] Berkshire Hathaway owns or controls over 30% of OPC's common stock, making it OPC's largest shareholder. *See* Occidental Petroleum Corp., Schedule 13G Under the Securities Exchange Act of 1934 (Aug. 14, 2025), https://www.sec.gov/Archives/edgar/data/1067983/000095017025108857/xslSCHEDULE_13G_X01/primary_doc.xml.

[13] Available at: https://occidentalpetroleum.gcs-web.com/static-files/3b02bb49-c90a-4905-a965-46c5cd26f338.

Group that are necessary to conduct the [former OxyChem NY] Business in all material respects." OPC, Current Report (Form 8-K), Ex. 2.1 (Purchase & Sale Agreement) § 4.06 (Oct. 1, 2025).[14]

Shortly after the sale was announced, EPA issued information requests under CERCLA Section 104(e) to OPC, OxyChem TX, ERH, and other OPC affiliates seeking information about the divisive merger, the sale, and related transactions. (*See* Lichtenstein Cert., Ex. C.) To Nokia's knowledge, the recipients continue to withhold material documents and information and have asserted confidentiality over documents produced. (*See* Compl. ¶¶ 88–91.)

## LEGAL STANDARD

Rule 24(a)(2) requires the Court to allow anyone to intervene as of right who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). CERCLA Section 113(i) provides a similar right to intervene:

In any action commenced under [CERCLA] . . . in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President

---

[14] Available at: sec.gov/Archives/edgar/data/797468/000114036125037234/ef20 056633_ex2-1.htm.

-13-

or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i).

"Because of their similarity, courts apply essentially the same test" to intervention motions under Rule 24(a) and CERCLA Section 113(i). *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994). Intervention is warranted as of right when: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Id.* (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)), *cert. denied sub nom. Castille v. Harris*, 484 U.S. 947 (1987). For elements one to three of the test, the movant has the burden of proof; for element four, the movant has the burden of proof under Rule 24(a) only, while the parties to the action have the burden under CERCLA Section 113(i). *Id.* n.9 (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994)).

The Court may also in its discretion grant "permissive intervention" under Rule 24(b) to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) ("[D]istrict courts have broader discretion in making a determination about whether permissive

-14-

intervention is appropriate as opposed to intervention as of right.") (citation omitted). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The same timeliness requirement for "as-of-right" intervention under Rule 24(a) applies to permissive intervention under Rule 24(b). *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016). Permissive intervention is meant "to avoid a multiplicity of suits by settling related controversies in a single action." *Wolf by Wolf v. Procter & Gamble, Co.*, 555 F. Supp. 613, 627–28 (D.N.J. 1982).

## LEGAL ARGUMENT

### I.    Nokia May Intervene in this Action As Of Right.

Nokia satisfies all four elements for as-of-right intervention under Rule 24(a)(2) and CERCLA Section 113(i). The divisive merger directly threatens multiple protectable interests that only Nokia can adequately represent. Intervention should be granted.

### A.    Nokia's Motion Is Timely.

Timeliness is determined by "the totality of the circumstances," not simply by counting days. *Alcan Aluminum*, 25 F.3d at 1181. Courts consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328 (D.N.J. 2004) (citation omitted). At its core, "where a party takes

reasonable steps to protect its interest, its application should not fail on timeliness grounds." *Alcan Aluminum*, 25 F.3d at 1182. The Third Circuit has thus expressed "a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012).

Nokia's motion easily satisfies these principles. The Complaint was filed on February 6, 2026. (*See* Compl.) Nokia filed this motion only 56 days later, and just 10 days after OxyChem TX filed its motion to dismiss. (*See* ECF No. 16.) No party is prejudiced, and no delay results.

## B. Nokia Has Protectable Interests That May Be Impaired or Impeded by This Action.

Even "a threat that the interest will be impaired or affected" suffices to establish a protectable interest. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). Nokia plainly has such an interest. Any ruling that insulates OxyChem TX and the former OxyChem NY revenue-generating assets from OxyChem NY's massive DASS liabilities directly threatens Nokia's ability to recover and equitably allocate its disproportionate exposure for the multi-billion-dollar LPRSA cleanup and future DASS liabilities.

Nokia is a named defendant in both *21st Century Fox* and *Givaudan* and has asserted contribution and cost-recovery claims against OxyChem NY for LPRSA

-16-

costs. If the divisive merger succeeds in limiting liability solely to ERH, Nokia's ability to recover—and to avoid paying vastly more than its fair share—would be materially impaired. ERH was allocated all OxyChem NY environmental liabilities but no productive assets; those assets went to OxyChem TX and were sold for nearly $10 billion. Segregating OxyChem NY's enormous DASS liability in an entity with no revenue producing operations and bereft of business assets creates serious risk of partial or complete default. Nokia has a protectable interest in preventing such a hollowing of its rights and magnification of its exposure.

The threat to Nokia would be compounded if ERH is subsequently placed into bankruptcy—the typical "step two" of a "Texas Two-Step" following the divisive merger. *See In re LTL Mgmt., LLC*, 64 F.4th 84, 96–101 (3d Cir. 2023).

### C.    Nokia's Interests Are Not Adequately Represented By An Existing Party In The Litigation.

The burden under this prong is "treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (observing that this factor "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal"); *accord Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022); *Pennsylvania v. President U.S.*, 888 F.3d 52, 60 (3d Cir. 2018).

Nokia readily satisfies this minimal burden. The Plaintiffs—represented by a single law firm—face materially different liability exposure than Nokia. This

-17-

divergence creates a substantial risk that Plaintiffs' litigation strategy and any potential resolution will fail to address Nokia's distinct concerns.

All but two of Arnold & Porter's thirty-five clients in this matter have been deemed by EPA eligible for cash-out settlement of their LPRSA liability. Nokia, by contrast, has been wrongly designated a work party obligated to fund and perform the remedies—a fundamentally different and far more onerous classification.

Thirty-two Plaintiffs are parties to the *Alden Leeds* settlement, which purports to resolve their fair share of LPRSA liability. Nokia opposed that settlement and has appealed this Court's approval. *See Alden Leeds*, ECF Nos. 307 (Nokia Opp'n to Mot. For Entry of Consent Decree) (Apr. 1, 2024), 398 (Notice of Appeal) (Jan. 16, 2025); *United States v. Alden Leeds, Inc.*, Nos. 25-1049, 25-1272 (3d Cir.). Hundreds of millions of dollars are at stake, and the parties' positions are directly antagonistic.

These substantial differences demonstrate that Plaintiffs' approach to this litigation may well fail to protect Nokia's interests—satisfying the minimal burden required for intervention.

Nokia meets all four prongs for intervention as of right under Rule 24(a) and CERCLA Section 113(i). This motion is timely, Nokia has substantial interests that would be impaired by this action, and those interests are not adequately represented by the existing parties. The Court should grant intervention on this basis.

-18-

## II.    **Nokia May Also Intervene Permissively In This Action.**

The Court should also grant Nokia "permissive" intervention under Rule 24(b).

Nokia "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Nokia has asserted contribution and cost-recovery claims against OxyChem NY, many Plaintiffs, and others for costs at the same site at issue here. Those claims are directly affected by the transaction challenged in this action. The factual and legal overlap is substantial.

It follows that Nokia's intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). This action has just begun, and Nokia's motion is timely. *See supra* pp. 15–16.

The Court should exercise its discretion to grant Nokia permissive intervention under Rule 24(b)(1)(B).

## CONCLUSION

For the foregoing reasons, Nokia respectfully requests that the Court grant its motion to intervene.

-19-

Respectfully submitted,

Dated:  April 3, 2026

By:    s/ Michael D. Lichtenstein
       **LOWENSTEIN SANDLER LLP**
       Michael D. Lichtenstein, Esq.
       One Lowenstein Drive
       Roseland, New Jersey 07068
       (973) 597-2408
       mlichtenstein@lowenstein.com
       *Counsel for Intervenor-Plaintiff*
       *Nokia of America Corporation*

-20-

## CERTIFICATE OF SERVICE

I, Michael D. Lichtenstein, Esq., hereby certify that, on this date, I caused a copy of the foregoing document to be served via electronic filing on all counsel of record.


Dated:  April 3, 2026               By:    *s/ Michael D. Lichtenstein*

**LOWENSTEIN SANDLER LLP**
Michael D. Lichtenstein, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2408
mlichtenstein@lowenstein.com