**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

October 30, 2026

VIA ECF
All Counsel of Record

**LETTER ORDER**

**Re: BASF Catalysts LLC, et al. v. Occidental Chemical Corporation, et al.**
**Civil Action No. 26-1226**

Dear Litigants:

Before the Court is Defendant Occidental Chemical Corporation's ("OxyChem TX") Motion to Dismiss ("Motion") Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), or, alternatively, under the Court's discretion pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. See ECF No. 16. For the reasons set forth below, OxyChem TX's Motion is **DENIED**.

## I. BACKGROUND

The issue presented is limited: whether Plaintiffs may proceed with a declaratory claim concerning OxyChem TX's alleged successor liability following a completed corporate restructuring involving Occidental Chemical Corporation, a New York corporation ("OxyChem NY"). Plaintiffs do not ask the Court in this action to establish the existence, scope, allocation, or amount of OxyChem NY's underlying liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Rather, they seek a determination whether the alleged divisional merger and purported allocation of environmental liabilities exclusively to Environmental Resource Holdings, LLC ("ERH") are legally effective to exclude OxyChem TX from successor liability for any CERCLA obligations of OxyChem NY.

### A. Factual Background

This case concerns the Diamond Alkali Superfund Site ("Site"), including the Lower Passaic River, Newark Bay, and related waterways. Plaintiffs—collectively, the Small Parties Group Litigating Parties—are potentially responsible parties ("PRPs") for Site cleanup. They allege that OxyChem NY was historically the principal PRP because its predecessors owned or operated the former Diamond Alkali facility and discharged hazardous substances into the Passaic River. See ECF No. 1 at 2–12.

Plaintiffs further allege that the Site's cleanup and associated natural resource damage ("NRD") obligations may total billions of dollars. See id. at 3–4. The Complaint identifies estimated cleanup costs of approximately $1.84 billion for the Lower Passaic River, up to $4.4 billion for Newark Bay, and at least $5.5 billion in NRDs. See id. Plaintiffs note that a United States Environmental Protection Agency ("EPA")-sponsored allocation report attributed between 92% and 99.94% of certain Lower Passaic River cleanup responsibility to OxyChem NY. See id. at 3.

In 2025, OxyChem NY allegedly completed a corporate reorganization. OxyChem NY first merged into a newly created Texas entity, Snowcone, LLC, which then changed its name to Occidental Chemical Company, LLC. See id. at 4–7, 20. Plaintiffs claim that Occidental Chemical Company, LLC subsequently completed a Texas divisional merger, yielding OxyChem TX and ERH. See id. OxyChem TX allegedly received OxyChem NY's productive operating assets, while ERH allegedly received OxyChem NY's legacy environmental liabilities. See id.

According to Plaintiffs, ERH claims that it alone holds OxyChem NY's CERCLA liabilities at the Site. See id. at 4, 8–9. Plaintiffs further allege that, upon information and belief, OxyChem TX and other recipients have withheld material transaction documents and information requested by EPA. See id. 22–23. Plaintiffs maintain that allocating environmental liabilities exclusively to an entity without OxyChem NY's productive assets or revenue-generating business creates an imminent risk that EPA or other claimants will be unable to obtain performance from that entity and will instead pursue other Site PRPs, including Plaintiffs. See id.

**B. Procedural History**

The parties are also involved in several related matters in this District. In Occidental Chem. Corp. v. 21st Century Fox Am., Inc., No. 18-11273 (D.N.J. June 30, 2018), OxyChem NY/ERH seeks cost recovery and contribution from numerous PRPs, including many of the Plaintiffs in this action. In Occidental Chem. Corp. v. Givaudan Fragrances Corp., No. 23-1699 (D.N.J. Mar. 24, 2023), OxyChem NY/ERH seeks additional cost recovery from many of the same parties. Both cases are stayed pending resolution of an appeal from the consent decree in United States v. Alden Leeds, Inc., No. 22-7326 (Dec. 16, 2022). See ECF No. 51 at 1 n.1.

The Complaint asserts one claim for declaratory relief. Plaintiffs request declarations that: (1) any purported transfer or allocation of OxyChem NY's CERCLA liabilities exclusively to ERH, to the exclusion of OxyChem TX, is ineffective under CERCLA § 107(e)(1), 42 U.S.C. § 9607(e)(1); and (2) OxyChem TX is jointly and severally liable for OxyChem NY's CERCLA liabilities. See ECF No. 1 at 23–25.

OxyChem TX moves to dismiss, arguing that the claim is unripe, OxyChem NY is a required and indispensable party, CERCLA § 107(e) affords no private cause of action, and the Court should decline declaratory jurisdiction because this case duplicates the earlier Site litigation. See ECF No. 16.1 at 1–2, 11–33.

## II. LEGAL STANDARD[1]

A motion under Rule 12(b)(1) may present a facial or factual challenge to subject-matter jurisdiction. A facial challenge disputes whether the allegations, accepted as true, establish jurisdiction; a factual challenge disputes the jurisdictional facts themselves. On a facial challenge, the Court considers the Complaint and documents attached to or referenced in it in the light most favorable to Plaintiffs. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357–58 (3d Cir. 2014). Here, insofar as OxyChem TX argues that the alleged restructuring and its consequences are legally insufficient to present a ripe controversy, the Court treats that argument as a facial challenge.

In assessing the ripeness of a declaratory claim, the Court considers the adversity of the parties' interests, the conclusiveness of the proposed judgment, and its practical utility. See Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990) (citation omitted). Declaratory relief may precede an accomplished injury, but the dispute must nevertheless possess sufficient immediacy and reality to warrant judicial resolution. See Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154–55 (3d Cir. 1995) (citation omitted).

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Under Rule 12(b)(7), the Court first determines whether an absent person is required under Rule 19(a). That inquiry considers whether the Court can accord complete relief among existing parties and whether adjudication would impair a qualifying interest of the absent person or expose an existing party to a substantial risk of inconsistent obligations. See Fed. R. Civ. P. 19(a)(1). If a required person can be joined, the Rule directs joinder. See id. Only if joinder is infeasible does the Court determine under Rule 19(b) whether the action should proceed or be dismissed. See Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312–13 (3d Cir. 2007).

Finally, the DJA is procedural: it enlarges the available remedies but does not create substantive rights or independently confer federal jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950); Malhan v. Sec'y U.S. Dep't of State, 938 F.3d 453, 457 n.3 (3d Cir. 2019) (citations omitted). A plaintiff may seek declaratory relief without also requesting damages or an injunction. See Aluminum Co. of Am. v. Beazer E., Inc., 124 F.3d 551, 560 (3d Cir. 1997). Nevertheless, the requested declaration must concern an otherwise judicially remediable right. See Schilling v. Rogers, 363 U.S. 666, 677 (1960). Where jurisdiction exists, the Court considers, among other factors, whether exercising declaratory jurisdiction would

[1] The Court applies distinct standards to OxyChem TX's jurisdictional, pleading, and joinder challenges and distinguishes the sufficiency of Plaintiffs' allegations from whether Plaintiffs will ultimately establish entitlement to a declaration.

resolve uncertainty, provide practical assistance, or instead foster unnecessary duplication or procedural fencing. See Reifer v. Westport Ins. Corp., 751 F.3d 129, 146 (3d Cir. 2014); see also Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 282–83 n.6 (3d Cir. 2017) (explaining that other considerations may be relevant).

## III. ANALYSIS

### A. Ripeness

The threshold question is whether Plaintiffs seek a present declaration of legal status arising from an already-completed transaction or instead seek an advisory ruling about contingent future liability. At the pleading stage, the Complaint adequately alleges the former.

Article III limits federal courts to actual cases and controversies. For declaratory-judgment claims, the Third Circuit considers: (1) the adversity of the interest of the parties, (2) the conclusiveness of the judicial judgment, and (3) the practical help, or utility, of that judgment. See Step-Saver, 912 F.2d at 647 (citation omitted). The underlying inquiry is whether the dispute is sufficiently "real and substantial" and admits "specific relief through a decree of a conclusive character," rather than an opinion about a hypothetical state of facts. See id. (citation omitted).

OxyChem TX argues that Plaintiffs' claim depends on a chain of contingencies: Plaintiffs must first establish OxyChem NY's liability in a related action; ERH must then fail or refuse to satisfy an obligation; and Plaintiffs must ultimately prove a separate claim against OxyChem TX. See ECF No. 16.1 at 12–17; ECF No. 37 at 5–9.

Plaintiffs allege that the restructuring has already occurred; OxyChem NY no longer exists as a separate entity; ERH claims to hold OxyChem NY's environmental liabilities; and OxyChem TX received the productive business assets. See ECF No. 1 at 4, 7, 20, 21; ECF No. 27 at 4–7. The requested declaration turns on the legal consequences of those completed events. Thus, the central issue, according to Plaintiffs, is not whether ERH will eventually default, file for bankruptcy, or fail to perform a future obligation; it is whether the alleged merger allocation can presently operate to exclude OxyChem TX from the CERCLA liabilities that OxyChem NY allegedly possessed before the restructuring.

The Court agrees with Plaintiffs. For starters, the parties' interests are sufficiently adverse. Plaintiffs do not seek adjudication of the existence, scope, allocation, or amount of underlying CERCLA liability. Rather, they seek a determination of OxyChem TX's alleged successor liability following the completed restructuring. Plaintiffs allege that they have incurred, and continue to incur, response costs and/or possess contribution rights, and dispute whether OxyChem TX shares responsibility for the predecessor's obligations. See ECF No. 1 at 5, 23–24; ECF No. 27 at 12–16. They contend that resolving OxyChem TX's successor status is necessary to guide their participation in ongoing and anticipated Site matters. The Court accepts those well-pleaded allegations as true at this stage. See Iqbal, 556 U.S. at 678–79.

The requested declaration is also sufficiently conclusive. A declaration limited to the validity of the alleged allocation and OxyChem TX's successor status would resolve a concrete legal question stemming from a completed transaction. It need not establish the amount of

OxyChem NY's purported CERCLA liability, decide whether Plaintiffs are entitled to contribution, or fix OxyChem TX's ultimate payment obligation. See ECF No. 27 at 16–18.

Finally, resolution of the successor-liability dispute has practical utility. The Complaint alleges pending claims against OxyChem NY, unsuccessful efforts to obtain information concerning the restructuring, and a risk that other PRPs will be required to satisfy obligations allegedly allocated exclusively to ERH. See ECF No. 1 at 5, 21–24; ECF No. 27 at 18. Clarifying OxyChem TX's status would guide the parties' litigation decisions and could assist regulatory engagement and Site-related negotiations. See id. Plaintiffs need not await an accomplished injury to seek that clarification. See Obusek, 72 F.3d at 1154–55.

The Court therefore holds only that Plaintiffs have alleged a ripe controversy over OxyChem TX's alleged successor liability. This jurisdictional determination does not establish successor liability, allocate cleanup responsibility, or determine the amount any entity must pay. Those issues remain subject to the governing substantive law and adjudication in the proceedings in which they are properly presented.

Accordingly, dismissal under Rule 12(b)(1) is not warranted.

**B. Rule 19**

Relatedly, the Court must consider whether OxyChem NY or ERH, as its asserted successor, must be joined before this declaratory action may proceed. On the Complaint as pleaded, OxyChem TX has not carried its burden to establish that dismissal is required under Rule 19.

Rule 19(a) requires joinder of an absent person only if, among other circumstances, the Court cannot accord complete relief among existing parties without that person or if the absent person claims an interest that may be impaired by disposition of the action. See Fed. R. Civ. P. 19(a)(1). The Court reaches Rule 19(b)'s indispensable-party inquiry only if the absent party is first required under Rule 19(a). See Gen. Refractories, 500 F.3d at 312–13.

OxyChem TX's joinder argument depends substantially on its characterization of this action as one adjudicating OxyChem NY's underlying liability to Plaintiffs. See ECF No. 16.1 at 18–22; ECF No. 37 at 9–11. But the claim, as presented here, addresses a different question: whether OxyChem TX can avoid successor liability by reason of the alleged restructuring, without determining the existence, scope, allocation, or amount of the underlying CERCLA liability. See ECF No. 27 at 19–24.

Plaintiffs allege that OxyChem NY ceased to exist as a separate entity through the merger. They further allege that ERH acknowledges responsibility for OxyChem NY's environmental liabilities and that the disputed issue is whether OxyChem TX shares that responsibility. See ECF No. 27 at 19–20. OxyChem TX has not demonstrated that resolving its own alleged successor status necessarily requires this Court to adjudicate the absent predecessor's underlying CERCLA liability.

The Court need not decide here whether ERH must be joined in an action seeking payment of contribution or response costs. It is enough to hold that OxyChem TX has not shown, at this

stage, that a nonextant predecessor must be joined to resolve whether OxyChem TX shares any successor liability arising from the transaction. Nor has OxyChem TX demonstrated that the limited declaration contemplated here necessarily impairs ERH's interests or creates a substantial risk of inconsistent obligations.

If the developed record or the relief actually pursued implicates ERH's interests in a manner that satisfies Rule 19(a), the Court may revisit joinder. The present record, however, does not support dismissal under Rule 12(b)(7).

### C. Failure to State a Claim

OxyChem TX argues that Plaintiffs fail to state a claim because the DJA is procedural and CERCLA § 107(e)—which provides that a qualifying agreement or conveyance cannot transfer away liability imposed by CERCLA—creates no private right of action. But Plaintiffs need not assert a separate private cause of action under that subsection. They seek a declaration concerning OxyChem TX's successor responsibility for OxyChem NY's CERCLA obligations, not a new remedy for violating § 107(e). See ECF No. 27 at 24–27.

The DJA supplies a remedy, not substantive rights or an independent basis for jurisdiction. See Skelly Oil, 339 U.S. at 671–72; Malhan, 938 F.3d at 457 n.3. A declaration must therefore concern an otherwise judicially remediable right. See Schilling, 363 U.S. at 677. Here, those rights arise under CERCLA's existing liability and contribution framework. See 42 U.S.C. §§ 9607(a), 9613(f); ECF No. 1 at 8, 17. Plaintiffs may seek a declaration concerning OxyChem TX's responsibility for those obligations without also seeking a cost-recovery or contribution award in this action. See Beazer, 124 F.3d at 560. Section 107(e) informs that determination without requiring an independent cause of action under that subsection. The Court thus need not imply a private remedy under that provision. See Alexander v. Sandoval, 532 U.S. 275, 286–88 (2001); 42 U.S.C. § 9607(e)(1).

Courts have used declaratory relief to resolve responsibility for CERCLA obligations separately from the underlying claims for monetary relief. See City Mgmt. Corp. v. U.S. Chem. Co., 43 F.3d 244, 249–51, 256 (6th Cir. 1994) (affirming summary judgment in a declaratory action that an asset purchaser was not liable as a successor for the seller's off-site CERCLA obligations); GNB Battery Techs., Inc. v. Gould, Inc., 65 F.3d 615, 618–19, 625 (7th Cir. 1995) (affirming a declaratory judgment that an assumption agreement encompassed disputed environmental liabilities); Lyncott Corp. v. Chem. Waste Mgmt., Inc., 690 F. Supp. 1409, 1414, 1418–20 (E.D. Pa. 1988) (adjudicating, in a separate declaratory action, the effect of settlement agreements on contribution exposure in pending CERCLA litigation).[2]

OxyChem TX's contention that no liabilities were transferred because ERH merely continued the predecessor under a different name does not warrant dismissal. As explained above,

[2] OxyChem TX's characterization of these authorities as merely contractual disputes is too narrow. See ECF No. 37 at 4–5. Lyncott and GNB Battery addressed the effect of agreements on responsibility for environmental liabilities, while City Management directly adjudicated whether an asset purchaser bore successor liability for its predecessor's CERCLA obligations. Plaintiffs here seek the latter type of determination: whether OxyChem TX bears successor responsibility for OxyChem NY's CERCLA obligations. They distinguish that requested relief from a declaration of liability for response costs under § 113(g)(2). See City Mgmt., 43 F.3d at 250–51, 55–56; ECF No. 27 at 26 n.6.

the Complaint details the merger sequence, the allocation of liabilities through a plan of merger, and the resulting separation of the operating business from environmental liabilities. See ECF No. 1 at 3, 19–24. Traditional corporate successor-liability principles apply to CERCLA claims, including where corporations merge or consolidate with a responsible party. See Smith Land & Improv. Corp. v. Celotex Corp., 851 F.2d 86, 91–92 (3d Cir. 1988). The alleged merger sequence and succession to the operating business plausibly support successor responsibility, while the purported allocation exclusively to ERH presents the distinct question whether that responsibility can be avoided by agreement. See Iqbal, 556 U.S. at 677–78. Plaintiffs thus seek a declaration, under the existing statutory framework, concerning OxyChem TX's responsibility as a successor for obligations at issue in separate pending CERCLA actions.

Finally, characterizing § 107(e) as a "rebuttal defense" does not foreclose declaratory relief. See ECF No. 16.1 at 28–29. Even if the provision operates defensively against an asserted contractual allocation, the DJA permits advance resolution of a ripe dispute over the parties' existing rights without awaiting an accomplished injury. See Obusek, 72 F.3d at 1154–55; ECF No. 27 at 29. That procedural remedy does not create a new substantive right.

In short, Plaintiffs have plausibly pleaded a justiciable declaratory claim concerning whether the alleged allocation of OxyChem NY's CERCLA liabilities can exclude OxyChem TX from liability otherwise imposed by CERCLA or applicable successor-liability principles. This ruling does not establish OxyChem TX's successor liability or adjudicate the underlying CERCLA obligations.

As a result, the Rule 12(b)(6) motion is denied.

### D. Declaratory Discretion

The final issue is whether the Court should nevertheless decline to exercise jurisdiction because the action allegedly duplicates the earlier Site litigation. The Court declines to do so at this juncture.

District courts possess discretion under the DJA to decline jurisdiction when declaratory relief would serve no useful purpose or would foster duplicative, piecemeal litigation. See Reifer, 751 F.3d at 146–47; State Auto Ins. Cos. v. Summy, 234 F.3d 131, 135 (3d Cir. 2000). Relevant considerations include whether a declaration will resolve uncertainty, whether there is a more convenient alternative remedy, whether the action duplicates another proceeding, and whether the declaratory action is being used for procedural fencing. See Kelly, 868 F.3d at 274, 282–83 n.6.

While there is overlap among the parties, the Site, and the broader universe of CERCLA disputes in this District, the Court cannot conclude on the current record that the present action simply duplicates the two related cases, 21st Century Fox or Givaudan Fragrances. Those cases primarily concern cost recovery, contribution, historical Site liabilities, and the effect of the Alden Leeds consent decree.[3] This action, as construed here, concerns the legal consequences of a later

[3] In 21st Century Fox and Givaudan Fragrances, OxyChem NY/ERH pursues CERCLA cost-recovery claims and, in 21st Century Fox, contribution claims concerning responsibility for Site costs. Both actions remain stayed pending the appeal of the Alden Leeds consent decree. See ECF No. 51 at 1 n.1. That appeal concerns the decree resolving the settling parties' alleged Lower Passaic River liability; this action concerns the legal consequences of a subsequent

divisional merger. A declaration on that narrow issue could clarify the identity of proper parties without resolving the underlying cost-allocation issues that remain before the Court in related cases.

## IV. CONCLUSION[4]

For the foregoing reasons, OxyChem TX's Motion, see ECF No. 16, is **DENIED**.

Plaintiffs may proceed on their limited declaratory claim concerning the alleged restructuring and OxyChem TX's successor liability. This ruling does not itself establish successor liability. Any declaration ultimately entered in this action would address successor liability only—not the existence, scope, allocation, or amount of underlying CERCLA liability. Nothing in this Letter Order lifts or modifies the stays in 21st Century Fox or Givaudan Fragrances, alters the Alden Leeds consent decree, adds or substitutes a party in any related proceeding, or resolves an issue pending on appeal.

The intervention motions remain terminated without prejudice as provided in ECF No. 51.

**SO ORDERED**.

***s/ Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

corporate restructuring. See id.; ECF No. 27 at 37. Nothing in this ruling modifies either stay, resolves any claim or counterclaim, allocates response costs, or adds or substitutes OxyChem TX as a party in either action. Nor does this ruling modify the Alden Leeds consent decree, determine its contribution protection, or resolve any issue before the Court of Appeals. Any request for procedural relief in those proceedings, including relief based on an eventual declaration in this action, must be addressed by the court presiding over the relevant proceeding.

[4] Magistrate Judge Wettre terminated without prejudice the five motions to intervene filed by the Public Entities, Nokia, the City of Passaic, the City of Newark, and Raritan Baykeeper, pending adjudication of OxyChem TX's Motion. See ECF No. 51 at 1, 4. As Judge Wettre's Order explains, the proposed PRP intervenors seek substantially the same declaration concerning successor liability as Plaintiffs, while Raritan Baykeeper emphasizes timely and effective remediation without recourse to taxpayer funds. See id. at 2–3. Her ruling remains in effect.